Spohn, Respondent, vs. National Fire Insurance Company of Hartford, Connecticut, Appellant.

*May 10—June 21, 1926.*

*Insurance: Waiver of provisions in policy: Limitation on agent's authority: Change in interest: Estoppel: Agent asserting that consent to transfer was appended to policy: Appeal: Failure to appeal as to dismissal of one of several defendants.*

1. The provisions of an insurance contract are binding on both parties unless legally waived or unless the contract is modified in the manner provided by the policy. p. 451.

2. Under sec. 203.01, Stats., a standard policy becomes void if any change takes place in the interest, title, or possession of the property insured, unless such change is contained in a written agreement added to the policy, except upon a devolution of interest by operation of law.  p. 452.

3. Generally, restrictions upon the authority of an insurance agent to waive conditions after the issuance of a policy are binding on the assured.  p. 452.

4. Where a policy provides for forfeiture upon a change in interest in the insured property without the written consent of the insurer, and that no provision is waived except by a writing indorsed on the policy, the court will not hold the forfeiture clause waived, in the absence of such a writing.  p. 452.

5. The doctrine of estoppel *in pais* will be enforced as to contracts to prevent injustice and fraud wherever applicable.  p. 455.

6. The knowledge of an insurance agent, having authority to consent to and validate a transfer of insured property, is the knowledge of the company, and his acts are binding on the company.  p. 456.

7. Where the purchaser of insured property presented an unexpired policy, with other papers relating to the purchase, to an agent of the insurer for indorsement of consent to transfer, and received the papers from the agent with the assurance that he was thereafter protected, and paid a fee for the services of the agent, the company is estopped from setting up the invalidity of the policy because of a failure to secure consent to the transfer of the property.  p. 456.

8. Where a plaintiff does not appeal from a judgment of dismissal as to one of two defendants, the case against the latter is not before this court upon the appeal of the other defendant; the legal effect of the failure to appeal being the same as though no action against the successful defendant had ever been instituted.  p. 458.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge.  *Affirmed.*

The appeal is from a judgment in plaintiff's favor and against the defendant the *National Fire Insurance Company* of Hartford, Connecticut.

The Delavan Lake Assembly is a Wisconsin corporation

and the owner in fee of certain lands, platted into lots, located on Delavan lake, in Walworth county. These lots are assigned only to stockholders of the corporation under a ninety-nine-year lease, the company retaining the fee. Lot 5 in block "G" had an improvement thereon consisting of a summer home, and on the 5th day of September, 1922, one Vale, who was then the owner of a lease of said lot, assigned and transferred the same to one E. A. Roesling, and in connection with such transfer Vale also assigned a policy of insurance in the defendant company, subject to the consent of such company, which policy expired on the 8th day of June, 1924. The defendant Johnson was an insurance agent and conducted an office at Delavan, Wisconsin, and as such agent represented about seventeen different companies, among which was the defendant; and the insurance policy involved herein was issued by said company through said Johnson as agent, and his name as such agent was entered upon the policy.

On the 15th day of August, 1923, the plaintiff, who was a stockholder of the Delavan Lake Assembly, with the consent of the Assembly purchased the interest of Roesling in said lot, and received in an envelope all of the documents pertaining to such transfer, including the insurance policy. Roesling and *Spohn* thereupon proceeded to the office of said Johnson, who, in addition to being an insurance agent, was also a notary public, for the purpose of consummating the transfer by an assignment of the stock certificate, the leasehold interest, and the insurance policy, and to obtain also the consent of the company to the transfer of such policy. Johnson, who at that time was engrossed in other business matters, represented that he was unable to give the matter his immediate attention, and requested Roesling and the plaintiff to return to his office in about an hour, during which time he would give the matter attention and prepare the necessary transfers preliminary to their final

consummation. When Roesling and the plaintiff returned to Johnson's office a number of documents were submitted to Roesling for signature, among which was the transfer of the stock certificate and the assignment of the lease, which documents were then signed, and both Roesling and the plaintiff were under the impression not only that the lease and the certificate were transferred but also the insurance policy, and that the latter transfer had been validated by the defendant company through its agent. All of the documents were thereupon inclosed in an envelope by Johnson and handed to the plaintiff, who thereupon inquired whether he was fully protected, to which inquiry Johnson answered in the affirmative.

It appears, however, that the insurance policy had not been transferred, neither was the validating consent of the company indorsed thereon, but the plaintiff, being under the impression that every necessary requirement had been fully complied with, took the envelope with the papers contained therein, paid the bill of $2 for services rendered by the agent, and deposited the documents in the envelope in his safe, where they remained until after the fire which occurred in April, 1924, and then for the first time it was discovered that the policy of insurance had not been transferred nor had the company indorsed by its agent its consent to its transfer.

The case was submitted to the jury on a special verdict, and the first two questions were answered by the court. By such verdict it was found: (1) That the defendant company had knowledge on the 15th day of August, 1923, that by mesne conveyances the interests of the original lessees in the stock and the leases had been conveyed to *Thomas J. Spohn;* (2) that the defendant company knew that formal consent to the assignments of the policy of insurance, including the assignment to the plaintiff, had not been made; (3) that the plaintiff delivered the insur-

ance policy, in connection with the other papers, to Johnson under circumstances that reasonably informed him that consent to the transfer of the policy to said *Spohn* was requested; (3½) that the payment of $2 was made in consideration of Johnson's services in drafting the transfer of the stock and leases and in making the transfer of the insurance policy to the plaintiff; (4) that the plaintiff paid to said Johnson $2 believing that the same was to cover the services of said Johnson in making the transfer of the policy of insurance as well as the transfer of the stock and leases; (5) that the plaintiff (referring to question No. 4) was, under the circumstances, justified in such belief; (6) that Johnson, when he returned the papers to the plaintiff on August 15, 1923, informed him in substance that he was protected; (7) that the plaintiff relied on the statement made by Johnson to the effect that he was protected, and assumed that the insurance had been properly transferred to him; (8) that the plaintiff, under all the circumstances, was justified in assuming that the insurance had been properly transferred to him; (9) that Johnson was negligent in failing to make the transfer of the insurance to the plaintiff; (10) that Johnson was negligent in not informing the plaintiff on August 15, 1923, that he was not protected under the insurance policy; (11) that the plaintiff was negligent in not discovering prior to the fire that he was not protected under the insurance policy.

There was no dispute but that there was a total loss of the building and its contents and that the value of both amounted to the sum of $2,300. Upon this verdict judgment was entered in favor of the defendant Johnson and the complaint as to him was dismissed, and no appeal was taken therefrom. As to the company, judgment was entered in plaintiff's favor for the full amount, with costs, and from such judgment the company has prosecuted this appeal. Further facts will be referred to in the opinion.

Spohn v. National Fire Ins. Co. 190 Wis. 446.

For the appellant there was a brief by *Hicks & Folonie* of Chicago, attorneys, and *Nolan, Dougherty, Grubb & Ryan* of Janesville, of counsel, and oral argument by *Paul N. Grubb*.

For the respondent there was a brief by *Bagley, Spohn & Ross* of Madison, and oral argument by *F. A. Ross*.

DOERFLER, J.  The policy in question is a standard policy, and, pursuant to sec. 203.01 of the Statutes, contained the following provision:

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto; . . . nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by rider added hereto."

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, . . . (d) if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) ; or (e) if this policy be assigned before a loss."

These provisions are plain and explicit. They cover the subject of waiver and prescribe the method which must be pursued in order to effectuate a waiver. Assuming that an agent has authority to waive the conditions and provisions of a policy after it is once issued and delivered, such authority is specifically limited, and such waiver can only ensue where the provisions of the policy have been complied with. A policy of insurance is a contract between the insurer and the insured, and the provisions thereof are binding upon both parties unless such provisions are legally waived or the contract is modified in the manner provided by the terms of the policy. Under these provisions of the

standard policy, the policy becomes void if any change takes place in the interest, title, or possession of the subject of the insurance, unless such change is contained in a written agreement added to the policy, there being but one exception, viz. where the insured dies and a devolution of interest thereby ensues by operation of law. *Macomber v. Minneapolis F. & M. Ins. Co.* 187 Wis. 432, 204 N. W. 331. It may be also stated as a general proposition that restrictions upon an agent's authority to waive conditions after the issuance of a policy are binding on the assured. 14 Ruling Case Law, 1162, 1163. We are herein solely concerned with the subject of waiver or estoppel after a policy has been issued and delivered and up to the time of the loss, and the legal effect of the decision herein is referable only and confined to such period.

The decisions in Wisconsin upon the subject of waiver as to conditions, both before and after the enactment of the first standard policy law, have been exhaustively and ably reviewed in the case of *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227, and the distinction between a waiver and an estoppel is there clearly treated and defined. The court in the *Welch Case,* Mr. Justice MARSHALL rendering the opinion, uses the following language:

"The court has never held, in the face of a policy provision forfeiting the contract for a violation of its provisions by the assured after the issuance thereof, such provision being accompanied by a stipulation that it shall not be deemed waived other than by a writing indorsed thereon, that a waiver could take place in any other manner. The court has often held to the contrary." Citing authorities.

In the *Welch Case* the doctrine of waiver was not involved, and the case was decided solely on the principle of estoppel *in pais,*—"the principle that one person cannot assume a position in his business relations with another in respect to a transaction of a pecuniary nature upon which

such other, acting reasonably, has a right to rely, and after such other has so acted change his position to that other's prejudice and obtain judicial aid to enable him to effectuate his fraudulent purpose." The *Welch Case* has been repeatedly cited and approved in subsequent decisions of this court, and the law as there laid down is in full force and effect at the present time, and is applicable to contracts of insurance issued under the present standard policy law. Unless, therefore, the facts in the instant case present a situation where the equitable principle of estoppel *in pais* can legally and logically be said to operate, the position of the defendant company must prevail, and the judgment be reversed with directions to dismiss the complaint.

Numerous cases, like *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295; *Hankins v. Rockford Ins. Co.* 70 Wis. 1, 35 N. W. 34; *Carey v. German American Ins. Co.* 84 Wis. 80, 54 N. W. 18; *Olbrich v. Mutual Fire Ins. Co.* 184 Wis. 413, 198 N. W. 607; *Bloomer v. Cicero Mutual Fire Ins. Co.* 183 Wis. 407, 198 N. W. 287; *Burr v. German Ins. Co.* 84 Wis. 76, 54 N. W. 22; and *Bourgeois v. Mutual Fire Ins. Co.* 86 Wis. 402, 57 N. W. 38, are cited in the brief of the learned counsel for the company, but, not being applicable herein, no useful purpose can be served by discussing them in detail. These cases substantially assert the validity of conditions in a policy of fire insurance; refer specifically to the subject of waiver; and hold that where conditions of a policy have been breached by a transfer of interest or title or by placing additional incumbrances upon the property, there being no waiver of the conditions as stipulated in the policy, the policy becomes void from the time of the breach. In other words, these cases involve specifically the breach of a condition, and were not decided upon the equitable principle of estoppel *in pais*.

In 14 Ruling Case Law, 1179, title "Insurance," § 355, it is said: "Even though an indorsement is required by a

policy, an estoppel arises on an agreement to indorse;" and in support of this doctrine the case of *Manchester v. Guardian Assur. Co.* 151 N. Y. 88, 45 N. E. 381, is cited. The facts in that case are set forth in the opinion as follows:

"Prior to and upon the 8th day of January, 1889, Ebenezer S. Strait owned certain premises situated in the county of Rensselaer. On that day he procured from the defendant, through its general agents at Troy, a policy of insurance upon the buildings on the premises insuring him against loss or damage by fire to the extent of $2,000. It was a New York standard fire insurance policy. At that time there were several mortgages upon the property held by the Troy Savings Bank, amounting to $16,000, and this policy with others was held by the bank as collateral, and it was in its possession. On August 1, 1890, Strait conveyed the property insured to Emily J. Manchester, who took immediate possession. The insurance by the defendant was also transferred to her. Shortly after these transfers, Strait, as her agent, notified the general agents of the defendant thereof and requested them to go to the bank where the policy was and make the necessary indorsement upon it, which they agreed to do. This agreement, however, they failed to perform. In the following September a fire occurred by which the property was destroyed."

In the opinion it is said:

"The most important and practically the only question in this case is whether upon those facts the plaintiffs were entitled to recover. The defendant, through its general agents, had notice of the change of ownership, and agreed to indorse upon the policy the defendant's consent to the transfer from Strait to Mrs. Manchester. . . . This agreement it failed to perform. The plaintiffs now seek to recover as damages for a breach of that agreement the loss they have sustained. *The defendant endeavors to relieve itself from liability because no consent was actually indorsed upon the policy.* In other words, it undertakes to defeat the plaintiffs' action upon the ground of the nonperformance of an act which it expressly agreed itself to perform." (Italics ours.)

Spohn v. National Fire Ins. Co. 190 Wis. 446.

The court in substance held that the plaintiffs could re-
cover and that the defendant company was estopped from
taking advantage of its failure to do that which it had ex-
pressly agreed to do.   See, also, 26 Corp. Jur. 307, title
"Fire Insurance," § 380, where numerous cases in the fed-
eral courts and cases from twenty-five states are cited with
approval.   So that the doctrine laid down in the *Manchester
Case* seems to be in accord with the overwhelming authority
upon the subject in the country.   The instant case in its
facts is much stronger than those involved in the *Man-
chester Case, supra,* for here there was not merely an agree-
ment by the agent to assign the policy and to validate the
same by indorsing the consent of the company by the agent,
but it was pretended and represented by the agent that such
transfer and indorsement had actually taken place, and the
assured relied upon such representations, and was expressly
assured by the agent that he was fully protected.   The
equitable doctrine of estoppel *in pais* is not confined to in-
surance contracts, but it operates with respect to all con-
tracts, and courts do not hesitate to enforce the doctrine
to prevent injustice and fraud in any contract field where
it is applicable.

But it is further argued by the learned counsel for the
insurance company that Johnson was not a general agent
of the company; that he was a mere soliciting agent, with
authority to issue policies of insurance, and that when the
policy was issued and delivered to the original insured his
authority ceased; that the knowledge of the agent at the
time of the attempted transfer of the policy was not the
knowledge of the company, and that the acts of the agent
were not binding upon the company.   It is true that under
the standard policy the authority of the agent to waive
conditions of the policy is limited.   It is confined to a waiver
in a manner and form provided for in the policy, which
requires a waiver and consent in writing indorsed upon the

policy.    It must also be conceded as a general proposition that a change in title or interest without the approval or consent of the company results in the policy becoming absolutely void.    However, it is undisputed in this case that Johnson had the authority to act for the company by consenting to the transfer and to validate the same by his indorsement as an agent.    He therefore had power to act in behalf of the company after the issuance of the policy. It is a well known fact that in nearly every case such power rests with the agent who represents the company, and that in most cases the application for a consent and validation is made to the agent.

In *Hankins v. Rockford Ins. Co.* 70 Wis. 1, 35 N. W. 34, it is said:

"Whenever an insurance company authorizes any person to do any one of the things thus specified, it cannot disclaim the agency of such person in the doing of anything necessarily implied in the specific act thus authorized."

Having granted to the agent the authority to consent to a change in ownership and to validate such change, the acts of the agent become the acts of the company, and it is bound by such acts.    So that it can be said that when Johnson represented and pretended that all of the necessary requisites had been complied with and that the plaintiff was fully protected, the plaintiff having relied upon such representations and statements and having changed his position in regard to the same to his detriment, the company will not now be heard to complain or to profit by the failure of its agent.

But it is further argued by counsel for the company that on the 15th day of August, 1923, when the plaintiff applied to the agent for a transfer of the policy and for its validation, the plaintiff and the company were entire strangers; that the contract of insurance had been previously breached by a transfer of the interests of the assured; and

that therefore, under the decision in the case of *Macomber v. Minneapolis F. & M. Ins. Co.* 187 Wis. 432. 204 N. W. 331, no estoppel could result. In the *Macomber Case* the plaintiff furnished the money with which to purchase the property insured, and placed it in the name of his wife. At the time of the fire he claimed to be the equitable owner of the property and therefore entitled to the insurance. Under the law of insurance such equitable ownership finds no recognition. Therefore, in that case, the plaintiff and the insurance company were utter strangers, and it was there held, in substance, that to recognize the plaintiff's interest it would be necessary for a court to create a contract which the parties themselves failed to create. These facts, therefore, materially distinguish the *Macomber Case* from the instant case, and the decision can in no way have a bearing upon the determination of the instant case. True, in the instant case the policy had become void, but the plaintiff was not a total stranger to the insurance company in the sense that Macomber was such a stranger. The application made to the agent on the 15th day of August was one for a validation of a policy which was voided merely by the failure to comply with certain conditions contained in the written policy. In legal effect it may be said, in a sense, that the application of the plaintiff for a validation amounted to a request for a continuance of the policy. In other words, it had the same effect as an application for a new policy. The premium for the full term of the policy had been paid to the insurance company and was retained by it. The policy had still the greater portion of a year to run. In other words, there was on August 15th in the hands of the company a portion of the unearned premium. This unearned premium constituted in part the consideration on the part of the company for its agreement to validate the policy to the end of the term for the benefit of the new owner.

The case therefore presents a situation where the plaintiff did everything that an ordinarily prudent man would do under the same or similar circumstances, and was led to believe by the agent who had authority to represent the company that he was fully protected, which, of course, was untrue, and under the decision in the *Macomber Case* it is strongly intimated that had the facts in the case been otherwise an estoppel *in pais* could have resulted.

Counsel for the company also assert that the court was not warranted in answering the first two questions of the special verdict; that there was a material conflict between the testimony of the plaintiff and of Roesling and the defendant Johnson. We have examined the record with great care, and are satisfied that, while an apparent conflict exists, the testimony of Johnson is so conflicting and contradictory that had the first two questions been submitted to the jury, with a different result, the answers thereto could not have been sustained. Johnson testified that in the interim between his adverse examination and the trial he had suffered a severe illness which affected his memory. No useful purpose would be served in reviewing the testimony of Johnson elicited on the adverse examination and on the trial, and we will therefore refrain from doing so. Suffice it to say that the action of the court was fully warranted and justified.

With the views thus expressed, it will be unnecessary to consider the other points raised in the case.

No appeal having been taken from the judgment of the lower court dismissing the complaint as against Johnson, the case against the latter is not before us and cannot be considered. In other words, the legal effect of the failure to appeal, in so far as the instant case is concerned, is the same as though no action had ever been prosecuted against Johnson. The holding of this court is merely to the effect that Johnson was the agent of the company on August 15,

1923; that he had authority to act in behalf of the company as its agent, to validate the policy as to the plaintiff; that in law the acts of Johnson were the acts of the company; and that the practically undisputed evidence warrants the application of the equitable principle of estoppel *in pais* as against the company; and ·that the company is estopped by the facts in this case from taking advantage of a situation by which plaintiff was led to assume that everything had been done to fully protect his interests and that he relied upon this situation created by the company, to his detriment.

*By the Court.*—The judgment of the lower court is affirmed.