Lincoln Park Arms Building Corporation for Use of Ella Schroeder, Appellant, v. United States Fidelity and Guaranty Company, Appellee.

Gen. No. 38,460.

Opinion filed December 30, 1936. Rehearing denied January 12, 1937.

George C. Bliss, of Chicago, for appellant.

Robertson, Crowe & Spence, of Chicago, for appellee; Eugene P. Kealy, of Chicago, of counsel.

Mr. Presiding Justice John J. Sullivan delivered the opinion of the court.

This is a garnishment proceeding brought by the Lincoln Park Arms Building Corporation against United States Fidelity & Guaranty Company for use of Ella Schroeder and is based upon a judgment for $5,000 recovered by the latter against the Lincoln Park Arms Building Corporation for the wrongful death of her husband. Upon the trial of the instant cause by the court without a jury, judgment was rendered against plaintiff and in favor of the garnishee. This appeal followed. No question arises on the pleadings. For convenience we will designate the building corporation as plaintiff and garnishee insurance company as defendant.

August 3, 1927, while plaintiff building corporation was engaged in the construction of the building known as the Lincoln Park Arms Hotel at 2734–38 Pine Grove avenue, Chicago, Charles Schroeder, husband of Ella Schroeder, an employee working on the building for an independent contractor, was killed as the result of the fall of a hoist. In the spring of 1927, Samuel Olson and Adolph Loeffler, doing business as a copartnership under the name of Olson & Loeffler, owned the vacant property at the aforementioned address, and, having commenced the erection of said hotel thereon, applied for and had issued to them by defendant insurance company a public liability indemnity policy which covered the period from March 30, 1927, to March 30, 1928. Defendant in its policy agreed to indemnify assured against loss from liability imposed by law upon the copartnership for damages on account of bodily injuries, including death resulting therefrom,

by reason of the performance of work on the building
in question let by insured to independent contractors
as described in the statement attached to and made a
part of the insurance contract. The insurance con-
tract covered only the construction of the hotel build-
ing at 2734–38 Pine Grove avenue and shows that the
estimated cost of it was $400,000, the premium payable
on the policy being at the rate of $0.073 for each $100
of cost. On or about May 2, 1927, Olson & Loeffler
organized the Lincoln Park Arms Building Corpora-
tion for the purpose of taking over the erection and
operation of the Lincoln Park Arms Hotel. Samuel
Olson and Adolph Loeffler subscribed and paid for all
the shares of stock of the corporation, except two qual-
ifying shares, and the copartnership of Olson &
Loeffler assigned to the corporation all its interest in
the ownership of the premises and the construction
of the hotel building. As already noted the contract
of insurance by its terms covered the liability of Olson
& Loeffler, the copartnership, in the erection and con-
struction of the Lincoln Park Arms Hotel, but, al-
though all interest which Olson & Loeffler had in the
premises and construction of the hotel, and for which
they were protected from liability under the terms of
the contract of insurance, was transferred to the
plaintiff building corporation shortly after the con-
struction of the hotel was undertaken, not only is there
no certificate attached to the insurance contract show-
ing a substitution of plaintiff corporation for the co-
partnership as assured therein, but no steps were
formally taken by Olson & Loeffller or by the Lincoln
Park Arms Building Corporation to give the latter
the benefit of the coverage of the policy as successor to
the interest of the copartnership. The copartnership
of Olson and Loeffler was not in any manner covered
or protected under the policy after the Lincoln Park
Arms Building Corporation was formed and took over

the ownership and entire interest of Olson & Loeffler in the premises and the construction of the hotel. $292, the estimated amount of the premium on the policy, was paid by Adolph Loeffler, who testified, "that [$292] I paid out of my own purse because we had no corporation funds at that time." When the construction of the building was completed a representative of defendant audited the books of plaintiff for the purpose of ascertaining the balance of the premium due on the insurance contract and as a result of said audit plaintiff building corporation paid defendant insurance company $211.70, the balance due on the premium. As to this, Loeffler's testimony, which was undisputed, was: "The corporation paid the balance of an estimated bill and a second bill after the audit was paid . . . by the Lincoln Park Arms Building Corporation." It is conceded that the premium was fully paid for the policy period from March, 1927, to March, 1928.

In her action against the owner of the hotel for the death of her husband Ella Schroeder named defendant as "Lincoln Park Arms Hotel, a corporation." The summons therein was served upon "E. Brady, clerk and agent of said corporation." This summons was delivered to one J. W. Foster, apparently the broker who arranged for the contract of insurance covering Olson & Loeffler. He in turn delivered it to defendant insurance company, which, upon its receipt, wrote the following letter to Lincoln Park Arms Hotel:

"September 25, 1931.

"Lincoln Park Arms Hotel,
    2738 Pine Grove Ave.,
    Chicago, Illinois.
    "Re:—Lincoln Park Arms Hotel—Ella Schroeder.
"Gentlemen:
    "This is to advise you that Mr. W. J. Foster, your insurance broker, called at this office today and pre-

sented us with a summons in the Superior Court of Cook County number 542900, returnable the first Monday in October in the case of Ella Schroeder.

"This is the first notice we received of this claim, therefore, we wish to advise you that we are accepting this summons under full reservation of rights pending an investigation.

"We are turning the summons over to our Legal Department for the attention of our Mr. Kealy, who will enter his appearance in your behalf. If the outcome of our investigation discloses that we are not responsible, you will be so advised.

"Yours very truly,

GEN'L SUPT. OF CLAIMS."

The Mr. Kealy referred to in the letter was defendant's general counsel in charge of its Chicago litigation. He entered his appearance for the Lincoln Park Arms Hotel, a corporation. Ella Schroeder's action naming the Lincoln Park Arms Hotel, a corporation, as defendant, was instituted September, 1931, but was not tried until September, 1933. Throughout all the time that the Schroeder case was pending and during the trial thereof, Mr. Kealy continued to represent defendant therein. After the jury's verdict was rendered he presented and argued a motion for a new trial, which was overruled in November, 1933, and upon entry of judgment prayed an appeal to this court with leave to file an appeal bond and a bill of exceptions.

Before the trial of the Schroeder case, it was discovered that the proper name of defendant in that action was Lincoln Park Arms Building Corporation instead of Lincoln Park Arms Hotel, a corporation, which was inadvertently used as defendant's name, and upon Ella Schroeder's motion leave was granted on September 26, 1933, the first day of the trial, to

amend her declaration "by changing the name of defendant wherever said name appears in the declaration to Lincoln Park Arms Building Corporation." It is fair to assume that the trial court found that although the Lincoln Park Arms Hotel, a corporation, was originally named defendant, the summons was properly served upon the agent of the Lincoln Park Arms Building Corporation at 2738 Pine Grove avenue since, when the latter was named defendant by amendment, no new summons was ordered to issue. Neither defendant insurance company nor attorney Kealy for it filed an appeal bond or perfected an appeal in behalf of plaintiff building corporation in the Schroeder case, and in January, 1934, Mr. Kealy withdrew as attorney for the Lincoln Park Arms Building Corporation without any notice by him or the insurance company to said building corporation of the entry of the judgment against it or of attorney Kealy's withdrawal from and the insurance company's abandonment of the further defense of that action. Execution was issued on the judgment, which was returned "no property found and no part satisfied." February 17, 1934, this garnishment proceeding was instituted and garnishment summons issued.

Plaintiff contends (1) that by auditing its books and accepting from it the audit premium of $211.70, due under the terms of the policy or contract of insurance issued to Olson & Loeffler, defendant is estopped from asserting that such policy or contract of insurance did not cover the liability of Lincoln Park Arms Building Corporation in Ella Schroeder's action against it; (2) that by defending the suit brought by Ella Schroeder in the first instance against the inadvertently named defendant, Lincoln Park Arms Hotel, a corporation, and after amendment of her declaration against the Lincoln Park Arms Building Corporation, up to the time of the entry of judg-

ment therein with full knowledge of the facts, defendant is estopped from asserting that the policy of insurance did not cover plaintiff's liability in that action; (3) that where the elements of estoppel exist as in this case, defendant is precluded from asserting that plaintiff is not the assured named in the contract; (4) that under the facts of this case defendant is estopped from asserting that there is no liability on its part because plaintiff did not pay the judgment returned against it in the Schroeder case as provided by condition I of the policy, which is as follows: ''No action shall lie against the Company to recover for any loss or expense under this Policy unless it shall be brought by the Assured for loss or expense actually sustained and paid in money by the Assured . . .''; and (5) that under condition O of the policy defendant is obligated to pay interest on the judgment since the date of its rendition, regardless of whether it is liable under condition I of the contract.

The theory of defendant insurance company is that it never had any insurance agreement or contract in force and effect with the Lincoln Park Arms Building Corporation and is, therefore, under no duty to said corporation; that the contract of insurance herein cannot be extended by an alleged waiver to include the Lincoln Park Arms Building Corporation as an assured where such corporation was not originally included within the policy coverage; that the judgment upon which this garnishment action is based is against the Lincoln Park Arms Building Corporation and not against Olson & Loeffler, the only named assured in the policy; and that, in any event, the policy in question is an indemnity policy under the terms of which the insurance company is not liable unless and until the assured has sustained a loss, which was not the fact here, there being no evidence that the Lincoln Park Arms Building Corporation has sus-

tained any loss by reason of the judgment entered against it in favor of Ella Schroeder.

In announcing its finding in favor of the garnishee the trial court stated: "In the alleged waiver by the acceptance of a premium, it would not substitute the Lincoln Park Arms Building Corporation . . . . I know your position is not without merit, but I don't feel that there is a contract existing between the Lincoln Park Arms Building Corporation and the insurance company. There can't be any substitution by waiver." Plaintiff did not and does not seek to have the protection of the policy extended to it, either on the ground of waiver of the conditions of the policy by the insurance company or on the ground that an express contract of insurance actually existed between it and defendant. Plaintiff relies solely upon the doctrine that defendant by its conduct, with knowledge of the facts, estopped itself from asserting that the contract of insurance did not cover the liability of the Lincoln Park Arms Building Corporation in the suit brought against it by Ella Schroeder.

The liability of an insurance company is ordinarily measured by the express terms of its written contract, which terms may, however, be waived by such company through the action of its agents, but as a general rule the policy cannot be extended to cover the liability of one who is not a party to the contract. Therefore the major question presented for our determination is whether under all the circumstances of this case defendant is estopped from asserting that the contract of insurance did not cover the liability of plaintiff in the action brought against it by Ella Schroeder.

It was the interest of Olson & Loeffler in the ownership and construction of the hotel as vested in the copartnership entity that was the subject of the protection of the insurance policy. That identical inter-

est was vested in the corporate entity after the incorporation of the Lincoln Park Arms Building Corporation to take over the ownership, erection and operation of the hotel. It was contemplated by the policy that only a portion of the premium for same would be paid at the time of its issuance. This was the estimated premium of $292 paid by Loeffler. It was further contemplated by the policy that the balance of the premium would be paid by the owner of the premises upon the completion of the building when an audit might be made of the owner's records to ascertain its total cost. The audit premium of $217.50 was paid by plaintiff after its records were audited by the insurance company. When Ella Schroeder brought the action for the death of her husband, the fact that she originally mistakenly named the Lincoln Park Arms Hotel, a corporation, as defendant, cannot detract in the least from the legal effect of the insurance company's assumption of the defense of that action. In so far as the record discloses there was no Lincoln Park Arms Hotel corporation, but the owner of the premises, Lincoln Park Arms Building Corporation, simply operated the property as the Lincoln Park Arms Hotel. It is clear that the insurance company had no dealings with any ''Lincoln Park Arms Hotel'' corporation prior to its receipt of the summons in the Schroeder case naming the Lincoln Park Arms Hotel, a corporation, defendant. A corporation under that name was an absolute stranger to defendant and it is reasonable to infer that it would then and there have disclaimed responsibility in the Schroeder action were it not for its audit of plaintiff's books and its receipt of the audit premium from plaintiff. We think it fair to assume that defendant confused the corporation originally named defendant in the Schroeder action with the Lincoln Park Arms Building Corporation, with which it had had previous dealings, and that its letter to the Lincoln Park Arms

Hotel and its appearance for defendant in the Schroeder case by attorney Kealy can be reconciled only upon that theory. While the insurance company stated in its letter of September 25, 1931, "that we are accepting this summons under full reservation of rights pending an investigation," it also stated "if the outcome of our investigation discloses that we are not responsible, you will be so advised." This letter, while addressed to the Lincoln Park Arms Hotel, 2730 Pine Grove avenue, necessarily reached the hands of plaintiff, which operated that hotel. It is conceded that although more than two years intervened between defendant's receipt of the summons in the Schroeder case and the trial of that case, the insurance company did not disclaim liability to the originally named defendant therein or to the building corporation, but continued to defend against that action by its attorney Kealy. When the inadvertence was discovered in the Schroeder case and the name of the defendant therein was changed to Lincoln Park Arms Building Corporation September 26, 1933, the first day of the trial of that case, by amendment of the declaration, the insurance company did not then disclaim responsibility but continued to defend the building association against Ella Schroeder's claim, and, as heretofore shown, after the adverse verdict, presented and argued a motion for a new trial, which was overruled and judgment entered November 24, 1933.

It thus appears that by insurer's failure to disclaim liability and its assumption of the defense of Ella Schroeder's action it treated the contract as though plaintiff was the assured named therein, and plaintiff, by reason of defendant's conduct, was justified in treating the contract of insurance as though it covered its liability, if any, to Ella Schroeder. Under paragraph 2 of the policy there is a specific agreement by defendant to defend in the name and on behalf of assured and at the cost of the insurer any suit brought

against the assured to enforce a claim, whether groundless or not. Under condition C of the Policy the assured could not interfere in any negotiations or legal proceedings conducted by the company on account of any claim nor could it settle any claim except at its own cost. Under these conditions plaintiff was placed at the mercy of the insurance company, which treated it as the assured and assumed the defense of the Schroeder suit.

It must be borne in mind that while the building corporation had not had itself formally substituted as the assured in the insurance contract with the consent of the insurer, the defendant knew that plaintiff had succeeded to the interest of the copartnership which was covered by the policy. Plaintiff had the actual possession of the policy through its officers Olson and Loeffler, and, assuming that its coverage extended to it, upon the service of the summons in the Schroeder case immediately delivered it to defendant as the policy provided insured should do, and the policy was treated as covering the building corporation both by plaintiff and the insurance company until the latter's attorney withdrew as attorney for the Lincoln Park Arms Building Corporation in January, 1934, at which time the insurance company, without notice, abandoned further defense of that action.

Defendant's position is that, notwithstanding the facts and regardless of its conduct, it owed no duty to plaintiff at all inasmuch as it was not the named assured under its policy. In other words, that it might with impunity assume and continue the building corporation's defense, ostensibly under the terms of the policy, with its knowledge of the facts as shown, and after an adverse judgment take the position that it was not liable because plaintiff was not named as an assured in the policy. Plaintiff had the right to make its own defense of the Schroeder suit if the insurance company was unwilling to assume the responsibility,

not only for such defense but for its liability as well. The insurance company deprived plaintiff of its right to so defend, and having done so with knowledge that plaintiff was the grantee and assignee of the identical interest of the named assured covered by the policy, that plaintiff's books were audited as the owner of the premises to ascertain the total cost of construction of the hotel and that plaintiff paid the audit premium, it cannot now be heard to assert that the policy of insurance did not cover the liability of plaintiff in the suit brought against it by Ella Schroeder.

The doctrine of equitable estoppel or estoppel *in pais* is that a party may be precluded by his acts and conduct from asserting a right to the detriment or prejudice of another (*Catherwood v. Morris,* 360 Ill. 473; *Draper v. Oswego County Fire Relief Ass'n,* 190 N. Y. 12, 82 N. E. 755); and we think that it should be invoked against defendant as being peculiarly applicable to the situation here presented. It is unnecessary that plaintiff should be actually prejudiced by the conduct of the insurer in assuming control of the defense of the Schroeder action and plaintiff need not show that it could have achieved a better result in that case had defendant not interfered. It will be conclusively presumed that plaintiff building corporation was prejudiced by the conduct of the insurer in assuming its defense.

On page 30 of its brief defendant insists "plaintiff has not cited a single case, and we believe there are none, in which a contract of insurance has been extended to cover a person or corporation not originally mentioned in said policy because of some alleged waiver on the part of a representative or agent of the company." We repeat that it is not plaintiff's contention that under the doctrine of waiver the policy could be extended to include an additional assured, but that by its conduct defendant estopped itself from asserting that the policy having been issued to Olson

& Loeffler, the copartnership, did not cover the liability of the Lincoln Park Arms Building Corporation in the suit brought by Ella Schroeder. Plaintiff did cite authorities which hold that one other than the assured named in an insurance contract may recover against the insurer on the theory of estoppel. In *Compton Heights Laundry Co. v. General Accident, Fire & Life Assurance Corp.*, 195 Mo. 313, where there was an almost identical factual situation, the court said at pp. 316, 319:

"The policy was issued to John F. Winter, Louis M. Winter and Joseph N. Barthelmass doing business in St. Louis as Compton Heights Laundry. In the latter part of June, 1914, these parties, being desirous of organizing a corporation under the laws of Missouri, informed the general manager of defendant for the State of Missouri, and a portion of Illinois, that they were going to incorporate and requested him to see that the insurance properly covered the corporation and this the manager agreed to do. The corporation was perfected and the certificate issued on June 30, 1914, and thereafter the business was continued at the same place by the same individuals and under the same management, although there were no changes or notations made upon the policy. The premium was based upon and regulated by the amount of wages paid the employees and called the pay roll. An auditor for the defendant examined the pay roll from the week ending May 23, 1914, to the week ending February 27, 1915. He also made an audit of the pay roll up to March 1, 1915, when the policy was canceled. So far as the record discloses the premium was paid up to the date of the cancellation. After the accident happened and after the suit was brought by the injured person against the plaintiff here as a corporation, the defendants denied liability therefor solely upon the ground that by reason of the rider it was not liable

to plaintiffs on account of any claim made by the injured person.

" . . .

"The contention made in behalf of defendant that it is not liable to the plaintiff because of the fact that the policy was issued to and indemnified a partnership cannot be upheld. The same agency that was its general manager for Missouri and portions of Illinois was also engaged in and had charge of the soliciting, collecting premiums and issuing policies in the city of St. Louis. The policies did not become effective until after countersigned by the person in charge of that agency. This agency by its conduct which we have related foreclosed defendant's right to insist on a formal written assignment of the policy and its consent indorsed thereon, as provided for in said policy."

In *J. Frank & Co. v. New Amsterdam Casualty Co.,* 175 Cal. 293, the court held at p. 295:

"Appellant's first point is that it was not bound by the terms of the policy to indemnify plaintiff for any loss, because it did not, as found by the court, enter into a contract of insurance with 'the plaintiff' [a corporation], but with J. Frank & Company, an *individual.* Undoubtedly an insurance corporation may usually stand upon the letter of its contract, and where the policy is based upon a warrant of status by the person, firm or corporation seeking insurance, the insurer may in certain cases be relieved of liability by misrepresentations of the applicant even when there is an absence of fraud. But an insurance company, like any other contracting party, may waive provisions placed in the policy solely for its own benefit and may by its conduct be estopped from asserting defenses which might otherwise be available. We do not mean to say that the mere statement by the assured of individual rather than corporate status would avoid the policy if timely objection were made, but it

is certain that whatever the rights of the casualty company may have been by reason of the false statement in the policy, it is now prevented by its own conduct from taking any advantage of that representation because it undertook the defense of its assured, under the recognized duty imposed by the contract, when J. Frank & Company was sued *as a corporation.*"

In *Illinois Indemnity Exchange v. Industrial Commission,* 289 Ill. 233, where the contract of insurance indemnified the copartnership of Edlund & Dennison, and upon the dissolution of the copartnership assured the business was carried on by Harry Edlund, individually, under the name of North Side Carriage & Wagon Company, the court held at p. 241:

"Plaintiff in error also argues that the dissolution of the partnership made the policy between it and Edlund and Dennison void. Plaintiff in error did not insist upon treating the contract at an end or ineffective by reason of such dissolution but by the attempted release it sought to be released from liability from the accident, and in the release itself it was stated it was to 'cover only the case of Knut Hannibal,' this being at a time when Edlund ran the business alone, and plaintiff in error manifestly knew that fact. Clearly, this would be treated as a waiver of any defense on account of the dissolution of the partnership. 'Where there is a stipulation that a policy shall become void on the happening of some subsequent event and the insurer has notice that the event has occurred but does not cancel the policy, the provision is waived and the policy remains in force.' [*Kelley v. People's Nat. Fire Ins. Co.,* 262 Ill. 158.] The dissolution of a partnership does not necessarily render a policy void. *Allemania Fire Ins. Co. v. Peck,* 133 Ill. 220; see, also, 2 Joyce on Insurance [2d ed.] sec. 2280." *Spohn v. National Fire Ins. Co. of Hart-*

*ford,* 190 Wis. 446, 209 N. W. 725; *Manchester v. Guardian Assur. Co.,* 151 N. Y. 88, 45 N. E. 381; *Wood v. Rutland & Addison Mut. Fire Ins. Co.,* 31 Vt. 552, and *Lumbermen's Mut. Ins. Co. v. Bell,* 166 Ill. 400, as well as the cases quoted from, and countless other authorities, hold that one other than the named assured in an insurance policy may recover against an insurer under the theory of ratification, waiver or estoppel.

It is true that in most of the above cited cases formal notice of the change in the interest and title of the subject matter of the insurance was given to the insurer, and that in many of the cases this was coupled with the unfulfilled promise of an authorized representative of insurer to make the necessary indorsement on the policy extending its protection to the successor in interest of the named assured. Where, as here, however, the insurer had such knowledge as shown by its audit of the books and records of the building corporation, and its receipt and acceptance of the audit premium on the policy from that corporation, it would seem that the necessity for formal notice of change in interest of the subject of the insurance was obviated. Under the principle of estoppel *in pais* one person cannot assume a position in his business relations with another in respect to a transaction of a pecuniary nature upon which such another, acting reasonably, has a right to rely, and after such other has so acted change his position to that other's prejudice and obtain judicial aid to enable him to effectuate his fraudulent purposes. (*Welch v. Fire Ass'n.* 120 Wis. 456, 98 N. W. 227.) By its assumption of liability, evidenced by its undertaking the defense of the suit by Ella Schroeder against the owner of the premises where her husband met his death, defendant is estopped from claiming that its responsi-

bility under the policy is confined exclusively to the named assured therein.

It is also urged by plaintiff that defendant insurance company is estopped from asserting that there is no liability on its part because the building corporation did not pay the judgment returned against it in favor of Ella Schroeder as provided by condition I of the policy, as heretofore set forth. Defendant insists that, even though it was otherwise estopped from asserting that its contract of insurance did not cover plaintiff's liability in the Schroeder action, still it could not be held liable because such contract was an indemnifying policy under which no recovery could be had against it except for loss or expense actually sustained and paid in money by assured. Where an insurance policy contains, as the policy involved here does, an agreement to indemnify insured and a condition that no action shall lie against the insurer "for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by the assured," and where the contract of insurance is not breached in any material respect by insurer, it clearly provides only for the reimbursement of money actually paid by assured in satisfaction of a judgment recovered against it for a liability within the terms of the policy. (*Kinnan v. Hurst Co.*, 317 Ill. 251.) Defendant being estopped from claiming that the building association is not entitled to the benefits of the insurance contract, plaintiff will necessarily be considered the assured under the policy for the purpose of determining if the insurance company is also estopped from asserting that it is not liable to the building association because it did not pay the Schroeder judgment, and therefore suffered no loss. An agreement in an insurance contract "to defend" a suit does not necessarily raise an obligation to prosecute an appeal, but it has been

held under the universal doctrine of good faith and fair dealing in the performance of contracts that an insurance company, by reason of its conduct, may be held liable for the expense of an appeal assured was compelled to prosecute upon refusal of insurer to do so.

In *Brassil v. Maryland Casualty Co.*, 210 N. Y. 235, the policy contained provisions similar to those in the policy here with reference to insurer's agreement to defend, the prohibition of assured from settling claims and the so-called "no action" clause. The extent of the indemnity under the policy there in question was $1,500 and judgment was obtained against insured for $6,000. All the claims could have been settled before trial for $1,500, but the insurer chose to defend the suit. After judgment it notified insured to pay the judgment and it would reimburse him to the extent of $1,500. Insured appealed the case at his own expense and had the judgment reversed. He brought an action against insurer to recover the cost of the appeal and in passing upon his right to recover the court said at pp. 240, 241:

"From that moment [the insurer's election to defend and assumption of the defense] the plaintiff was no longer a free agent. By the express provisions of his contract he was denied the right to settle on his own account or to assume charge of the litigation. In these circumstances the cases proceeded to trial and judgments were rendered against him for upwards of $6,000. One would naturally suppose that, in view of the defendant's previously declared determination to defend those actions, there would have been the prompt appeals usual in such cases. But it was not so here. The defendant, having succeeded in getting the plaintiff mulcted in damages largely exceeding the indemnity to which he was entitled under his policy, graciously announced that it 'holds itself ready to

comply with the terms' of the contract in case the defendant should satisfy the judgments which had been recovered against him. The plaintiff was naturally indignant and retorted that he would prosecute the appeals on his own account and hold the defendant responsible for the cost.

"The mere statement of this unique situation indicates that the true measure of the rights of the plaintiff on the one hand and of the obligations of the defendant on the other is not to be found in the letter of the contract of insurance. That contract, by its very terms, was designed to exclude any such liability. But there is a contractual obligation of universal force which underlies all written agreements. It is the obligation of good faith in carrying out what is written. The defendant's failure to observe this requirement of the contract in suit is the thing upon which its liability may safely be predicated."

This case is novel and the circumstances as peculiar as they were in the *Brassil* case, *supra*. As shown heretofore the insurance company, through its attorney, conducted the defense of the Schroeder case until judgment was rendered therein. Without notice to the building association that the judgment was entered it prayed and was allowed an appeal. Neither the insurance company nor its attorney filed an appeal bond or perfected the appeal. About two months after judgment was entered the insurance company's attorney withdrew as attorney for defendant building association in the Schroeder case, and it is conceded that neither he nor the insurance company notified the building association of the judgment entered against it or of insurer's abandonment of its defense and refusal to perfect the appeal in time to afford such building association an opportunity to prosecute its own appeal. By its conduct insurer deprived plaintiff of important and valuable rights. In our opinion

defendant's failure, under the circumstances, to continue the defense of the Schroeder case, or in any event its abandonment of such defense without seasonable notice to the building association, so that it might prosecute its own appeal from the judgment rendered therein was, in effect, a breach of its contract to defend. Where an insurance company breaches its contract to defend assured as agreed in its policy, the rule prevails that assured is released from the condition of the insurance contract that no action will lie against insurer unless for loss actually sustained and paid by insured. (*Kinnan v. Hurst Co., supra; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 U. S. 173.)

We hold that the trial court erred in finding and entering judgment in favor of defendant against plaintiff. We further hold that defendant is liable to pay garnishor for the use of Ella Schroeder $5,000, the amount of the judgment rendered in her favor against the building association November 24, 1933, and in addition thereto costs and interest on said judgment as provided in the policy from the date of its rendition, amounting to $774.28.

For the reasons indicated the judgment of the superior court is reversed and judgment entered here for $5,774.28 against defendant garnishee, and in favor of the garnishor for the use of Ella Schroeder.

*Reversed and judgment here for $5,774.28.*

FRIEND and SCANLAN, JJ., concur.