**BURNHAM SHOES, INC.,**
Plaintiff-Appellant,

v.

**WEST AMERICAN INSURANCE COMPANY and American Fire and Casualty Company, Defendants-Appellees.**

No. 85-7534.

United States Court of Appeals,
Eleventh Circuit.

March 27, 1987.

Joel E. Dillard, William J. Baxley, Birmingham, Ala., for plaintiff-appellant.

Robert S. Lamar, Jr., Birmingham, Ala., for defendants-appellees.

---

Before GODBOLD, and VANCE, Circuit Judges, and THOMAS *, Senior District Judge.

VANCE, Circuit Judge:

This court certified to the Supreme Court of Alabama two controlling questions of Alabama Law. *Burnham Shoes, Inc. v. West American Insurance Co.,* 784 F.2d 1531 (11th Cir.1986). The responding opinion of the Supreme Court of Alabama follows as an appendix to this opinion.

Plaintiff-appellant sued its insurer for breach of the insurer's duty to provide a defense in an antitrust suit brought against plaintiff by a competitor. The correctness of the district court's summary judgment for the insurer turns on the answer to the certified questions.

The state supreme court held that Alabama public policy does not void an insurer's contractual duty to defend against a lawsuit in which an intentional wrong by the insured is alleged. It also held that in such a case if the insurer undertakes to defend its insured without reserving the right to withdraw its defense, it thereby waives its right to do so.

These state law holdings, which are here controlling, are contrary to the rulings of the district court. The district court's judgment is therefore reversed and the case remanded for further proceedings.

REVERSED and REMANDED.

APPENDIX

85-709-CER.

Supreme Court of Alabama.

Jan. 30, 1987.

CERTIFIED QUESTIONS FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

BEATTY, Justice.

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

This Court consented to answer the following questions certified by the United States Court of Appeals for the Eleventh Circuit, 784 F.2d 1531:

(1) Is an insurance provision, which otherwise would obligate the insurer to defend the insured in a lawsuit based upon intentional wrongs alleged to have been committed by the insured, void as against the public policy of the state of Alabama?

(2) Does an insurer, who undertakes to defend an insured without reserving the right to withdraw its defense, thereby waive its right to do so? If so, is the insurer obligated to continue providing a defense even if to do so would otherwise be against public policy?

The following statement of the facts of this case is taken from the certification from the Eleventh Circuit:

"II. *Statement of the Facts.* In August 1981, plaintiff Burnham Shoes, Inc. ("Burnham") purchased two insurance policies issued by defendants West American Insurance Co. and American Fire and Casualty Co. ("the insurers"), related insurance companies. The policies provided coverage for certain of Burnham's business operations for the period from August 19, 1981, to August 19, 1984.

"In July 1984, R.F.T., Inc. brought a federal antitrust action against Burnham and five other defendants. The complaint alleged that the defendants had violated section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to drive a shoe store owned by R.F.T. out of business. The defendants were alleged to have conspired to prevent the store from obtaining brand-name shoes, and to prevent R.F.T. from selling the store by convincing the store's leasing agent not to allow a prospective purchaser to assume or renew the store's lease.

"The insurers initially defended Burnham in the suit, filing an answer to R.F.T.'s complaint on September 5, 1984. After about a month, however, they notified Burnham that they were denying coverage for the suit and would not provide any further defense. Burnham set-

tled with R.F.T., then filed this action. It seeks a declaration that the insurers were obligated to provide a defense against the R.F.T. action, and asks that they be required to pay the settlement.

"The district court granted summary judgment for the insurers. It held that, *assuming the insurance policies otherwise would have obligated the insurers to defend the R.F.T. suit,* such coverage would be void as against public policy since it would amount to insurance against the insured's own intentional wrongful acts. The court also held that the insurers had not waived their right to refuse coverage by initially defending the suit, finding that coverage prohibited by public policy cannot be accomplished by waiver. This appeal followed." (Emphasis added.)

In its order, the district court found the case of *St. Paul Ins. Cos. v. Talladega Nursing Home,* 606 F.2d 631 (5th Cir.1979), to be controlling of the present case. In *St. Paul Ins. Cos.,* the Fifth Circuit, construing Alabama law, held that insurance contracts purporting to obligate an insurer *to indemnify* an insured in civil actions alleging slander, interference with business relations, and violations of federal antitrust laws (i.e., intentional wrongs), violate the public policy of this state, and are, therefore, invalid. With respect to the additional question of the insurer's obligation *to defend* an insured in such cases, which is the dispositive question posed here, the Court held in *St. Paul Ins. Cos.* that there was "no duty to defend the cases in their present posture." 606 F.2d at 635. In so holding, the Fifth Circuit relied primarily on this Court's decision in *Ladner & Co. v. Southern Guaranty Ins. Co.,* 347 So.2d 100 (Ala.1977). However, no question of a public policy constraint on the insurance contract was presented in *Ladner & Co.,* although only intentional acts were alleged against the insured. There, this Court simply reiterated well established principles of law and held that, in that case, there was nothing in the allegations of the complaint nor in the record before the Court which tended to establish that the alleged injury

or occurrence came within the coverage of the policy (which expressly excluded intentional acts), so as to obligate the insurer to *defend* regardless of the ultimate liability of the insurer to pay:

"The issue before us ... is whether the qualifying clause in the definition of occurrence, 'neither expected nor intended from the standpoint of the insured' operates to excuse the insurer's duty to defend where the only theories of recovery alleged in the complaint charge the insured with intentional acts.

"It is well established that the insurer's duty to defend is more extensive than its duty to pay. If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured. *Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948). It is also generally the rule that the obligation of a liability insurer, under a policy requiring it to defend its insured in an action brought by a third party, is determined by the allegation of the complaint in such action. *Bituminous Casualty Corporation v. Bartlett*, [307] Minn. [72], 240 N.W.2d 310 (1976); *Argonaut Southwest Insurance Co. v. Maupin*, Tex., 500 S.W.2d 633 (1973); 50 A.L.R.2d 499.

"This court, however, has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured. In *Pacific Indemnity Company v. Run-A-Ford Company*, 276 Ala. 311, 161 So.2d 789 (1964), Justice Coleman, speaking for the court, held:

" '... We are of opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence....' (276 Ala. at 318, 161 So.2d at 795)

"The court went on to state that when the allegations of the complaint show that the injury alleged is not within the coverage of the policy, other facts which did exist but were not alleged, could be taken into consideration. The court also noted that the policy in that case did not provide which procedure should be followed; but, under those circumstances, it should be liberally construed in favor of the insured, and that construction permitted the court to look to facts outside the bare allegations of the complaint.

"Although that rule has been established in Alabama, there is nothing in the record before us, looking beyond the allegations of the complaint, to indicate that the plaintiffs in the lawsuit against Ladner are asserting any theory of liability other than that Ladner knowingly sold them lots that flooded.

"Thus, as presently postured, the claims of the plaintiffs against the insured charge intentional acts of the insured and, therefore, do not charge the insured with acts covered in the policy which limits the insurer's duty to defined to acts 'which [result] in bodily injury or property damage neither expected nor intended from the standpoint of the insured.'

"In *Grand River Lime Co. v. Ohio Casualty Insurance Co.*, 32 Ohio App.2d 178, 289 N.E.2d 360 (1972), a suit was brought against the insured alleging in the second cause of action acts on the part of the insured which '... "constitute willful and intentional misfeasance and malfeasance on the part of the defendants, and that the defendants have intentionally, willfully and wantonly conducted their manufacturing operations in such a manner as to injure the property rights of others...." ' (289 N.E.2d at 363)

"There the court said that such allegations asserted knowledge and willful intent of the defendant and held:

" '... [T]hat the defense of the second cause of action could not be required under the definition of "occurrence" as contained within the policy. Such allegations would not constitute a claim for damages "neither expected

nor intended from the standpoint of the insured." ' " (289 N.E.2d at 363, 364)

The language of the policy involved in *Grand River* is identical to that contained in the two policies involved here.

"We hold, therefore, that as presently postured, the defendant insurance companies are not presently required to defend the lawsuit pending against Ladner. The allegations of their complaint allege only intentional acts by Ladner; and nothing in the record before us indicates that any other theory of liability is asserted. True, Ladner denies knowing that the lots it sold to the plaintiffs would flood, but that is a matter to be determined in the lawsuit. Its denial in no way changes the nature of the claim made by the plaintiffs."

347 So.2d at 102–03. Accord, *United States Fidelity & Guaranty Co. v. Armstrong,* 479 So.2d 1164 (Ala.1985).

Although the insurance policy in *St. Paul Ins. Cos., supra,* required the insurer to *defend* the insured against " 'both bodily injury and personal injury claims (such as libel, slander, invasion of privacy, false detention, etc.),' " the Fifth Circuit apparently concluded that this contractual obligation *to defend* also violated Alabama's public policy, as it had concluded that the contractual obligation *to indemnify* the insured for intentional acts for which he is found liable, violates our public policy.[1] The Fifth Circuit cited no authority for its holding in *St. Paul Ins. Cos.* with respect to the insurer's obligation *to defend.* Nor have we been cited to any authority holding that it is or should be a violation of the public policy of this state to require an insurer to uphold its contractual obligation *to defend* its insured against claims alleging *intentional* wrongs. Furthermore, we have found no authority concerning the public policy aspects of the insurer's contractual obligation *merely to provide its insured a defense* to such claims. However, "[i]t is well established [in this state] that *the insurer's duty to defend is more extensive*

than its duty to pay," *Ladner & Co., supra,* and we fail to perceive how requiring an insurer to meet its contractual obligation to *provide a defense* to claims alleging intentional acts violates the public policy of this state. Indeed, where the insurance contract in question *expressly* provides for such coverage (and the insurer has collected a premium therefor), we see no reason whatsoever to allow the insurer, on public policy grounds, to avoid these provisions in its own contract, which would otherwise obligate it to defend.

As noted, the district court in the present case followed *St. Paul Ins. Cos., supra,* and held that "even if the insurance contracts required defendants to indemnify and defend plaintiff in the earlier action, such contract [sic] would be void in Alabama as against public policy." Thus, apparently, there has been no factual determination as to whether the contracts in question obligate the insurer to provide a defense against the specific claims alleged in this case. We do not presume to make this determination here.

Should it be subsequently determined that the policy in question, by its terms, does not obligate the insurer to provide a defense in this case, then the question becomes whether the insurer waived this lack of coverage by undertaking to provide a defense without reserving the right to withdraw. However, we do not presume to decide whether, in fact, there has been a waiver in this case. Rather, we answer the second question, as certified, objectively. Nevertheless, having answered the first question in the negative, we need only address the first part of the second question, *viz.,* whether an insurer who undertakes to defend an insured without reserving the right to withdraw its defense, thereby waives its right to do so.

In *Campbell Piping Contractors, Inc. v. Hess Pipeline Co.,* 342 So.2d 766 (Ala. 1977), this Court adopted the general rule with respect to the right of an insurer to withdraw a defense already undertaken without a reservation of the right to ques-

---

1. We express no opinion here as to the correctness of the Fifth Circuit's conclusion that insurance contracts in which the insurer agrees to *indemnify* its insured for intentional acts violate the public policy of this state.

tion at a later time its obligation to defend under the contract:

"The doctrine of estoppel is said to be founded upon principles of equity, morality and justice. 31 C.J.S. Estoppel § 1. When a liability insurer, by assuming the defense of an action leads one to believe liability to do so is not denied, it would be unfair to subsequently permit that insurer to deny coverage, when, without reservation and with knowledge, it assumes exclusive control of the defense of an action. See 38 A.L.R.2d 1148, § 5[b], citing *Security Ins. Co. v. Jay,* 109 F.Supp. 87 (D.C.Minn.1952); *Lincoln Park Arms Bldg. Corp. v. U.S.F. & G. Co.,* 287 Ill.App. 520, 5 N.E.2d 773 (1936); *General Tire Co. v. Standard Acci. Ins. Co.,* 65 F.2d 237 (CA 8th Minn.1933). The general rule is limited by the principle that the insurer may avoid the operation of the rule by giving notice that the assumption of the defense is not a waiver of its right to deny coverage.

"The general rule is stated in the following manner at 38 A.L.R.2d 1151, § 3:

"'... a liability insurer which assumes and conducts the defense of an action brought against the insured with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the defense of noncoverage....'

Cases from thirty jurisdictions are said to follow this general rule.

"A like number of jurisdictions also hold that the insurer need only give timely notice that its undertaking to defend does not constitute a waiver of any coverage question it might have. We can see no reason for a distinction to be made in this case."

342 So.2d at 770–71. This Court held that, under the circumstances of that case, the insurer could not withdraw its defense:

"Under these circumstances, we think it is too late for U.S.F. & G., insurer of Campbell, to now take the position that it owes no defense to Hess. With full knowledge that the lawsuit was inev-

itable, and without any reservation of rights to later deny liability, it undertook to defend both Campbell and Hess in the Nelson litigation. It is now estopped to deny that it is so obligated.

"....

"Under the undisputed facts in this case, U.S.F. & G. undertook to defend the action brought by Nelson against Campbell and against Hess. It retained an attorney for that purpose. When the attorney pointed out that a conflict would exist which would prohibit his representing both Campbell and Hess if Campbell (or U.S.F. & G. as its insurer) denied that Campbell was obligated to Hess under the indemnity provisions of the contract, it was conceded on all sides that Campbell and U.S.F. & G. agreed to defend Hess pursuant to the contract."

342 So.2d at 470–71. Accord, *Home Indemnity Co. v. Reed Equipment Co.,* 381 So.2d 45, 51–52 (Ala.1980).

Thus, under Alabama law, if an insurer does, in fact, undertake to defend an insured without reserving the right to withdraw its defense, it thereby waives its right to do so.

QUESTIONS ANSWERED.

All the Justices concur.