131 So.2d 182

**COMMERCIAL STANDARD INSURANCE COMPANY**

v.

**NEW AMSTERDAM CASUALTY COMPANY et al.**

I Div. 851.

Supreme Court of Alabama.

March 23, 1961.

Rehearing Denied June 22, 1961.

Lyons, Pipes & Cook, Mobile, for appellant

Johnston, McCall & Johnston, Mobile, for appellee New Amsterdam Cas. Co.

J. Terry Reynolds, Jr., and Wm. R. Lauten, Mobilè, for appellee cross-appellant and guardian ad litem.

SIMPSON, Justice.

This is an appeal from a declaratory judgment proceeding wherein the Mobile Circuit Court in Equity rendered a decree holding appellant (to be referred to as Commercial or Commercial Standard) to be primarily liable, and the appellee (to be referred to as New Amsterdam) to be secondarily liable as related to the defense and satisfaction of any judgment or obligation involving the disposition and satisfaction of law actions filed in the Circuit Court of Mobile County by Norris P. Richard and Suzanne Michele Richard against Gary Ellis, Individually and doing business as Ellis Nurseries, and Kenneth L. Ross for alleged injuries sustained by Suzanne Michele Richard on the 27th of January, 1957.

The facts giving rise to the litigation are briefly summarized: Gary Ellis was doing business in Mobile as Ellis Nurseries, and his agent in selling his products was Kenneth L. Ross. Mr. and Mrs. Norris P. Richard, on the date mentioned, purchased some shrubbery from Kenneth L. Ross, salesman for Ellis Nurseries, at the Bradford and Government Street location in Mobile. Ross delivered the articles to the Richard's two-door automobile parked in the Ellis Nurseries' parking lot and placed part of the articles in the trunk and the remainder on the floor in the rear seat of Richard's automobile and perhaps one bush on the floor in the front of the car. Ross remained beside the open door of the automobile for a period of three or four minutes conversing with Mrs. Richard about purchases she had made previous to those that day. At the close of the conversation Ross, as a convenience for Mrs. Richard, proceeded to close the car door. Suzanne Michele Richard, their twenty-one months old daughter, as a result of the door being closed upon the fingers of her right hand, suffered the injuries complained of in the actions at law.

Appellant, Commercial Standard, had issued an automobile liability policy to Norris P. Richard, and appellee, New Amsterdam, which filed the bill, had issued a comprehensive general liability policy to Gary Ellis, Doing Business as Ellis Nurseries. The principal question is whether Kenneth L. Ross, as agent of Ellis Nurseries, and Gary Ellis, Individually and Doing Business as, etc., were covered under the omnibus clause of Commercial Standard's policy to Richard, thereby devolving upon said Commercial Standard the primary duty and obligation to defend the actions at law and to pay such judgments as may be rendered. The trial court held that Ross and Ellis, etc., were omnibus insureds under appellant's policy; that Ellis' liability, if any, is based upon the doctrine of respondeat superior; that appellant was to defend both Ross and Ellis and pay within the applicable limits of liability of its policy any

judgment rendered against either or both; should appellant's liability become exhausted with respect to any judgment rendered against Gary Ellis, only then would appellee, New Amsterdam, become obligated as insurer of Ellis as a secondary or vicarious liability.

The pertinent provisions of Commercial Standard's policy which gave rise to this construction are as follows:

"Insuring Agreements

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or *use* of the automobile. [Emphasis supplied.] * * *

"III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes *any person while using the automobile* and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. [Emphasis supplied.] * * *

"Conditions

"25. Purposes of Use: * * * (c) *Use* of the automobile for the purposes stated includes *the loading* and unloading thereof." [Emphasis supplied.]

There is no dispute that Suzanne Michele Richard received injuries caused by the accident; nor is there any dispute that such injuries were received when Kenneth L. Ross closed the door of the Richard's automobile after delivering the articles sold. The dispute arises as to whether or not Kenneth L. Ross was "using" the automobile at the time of the accident within the omnibus insured's clause of Commercial Standard quoted above. Undoubtedly, use of the automobile by "loading" is an element of coverage in Commercial Standard's policy, but we shall undertake to show that the learned trial court was in error in holding that coverage was afforded appellees Ross and Ellis under the omnibus loading clause of Commercial's policy. No fixed rule can be set down to define the term "loading" in all cases. Each case must be treated separately according to its own particular facts. We are here concerned only with the connotation of the word "loading" under the circumstances related.

▌ The general rule is that insurance policies should be liberally construed in favor of the insured and words of the policy must be given their ordinary and generally understood meaning. Strained or unusual construction of any of the terms should not be indulged in in favor of either the insurer or the insured. Kilby Car & Foundry Co. v. Georgia Casualty Co., 209 Ala. 356, 358, 96 So. 319.

▌ The terms employed in Commercial's policy do call for construction since the term "loading" is not clearly spelled out. In insurance contracts the term "loading" is a term of extension and not intended to restrict coverage otherwise afforded, and the phrase "use of the automobile" in that connection extends beyond its usual connotation and applies to the physical process of moving goods in or onto an automobile while it is at rest. American Oil & Supply Co. v. United States Casualty Co., 19 N.J.Misc. 7, 18 A.2d 257; Pacific Automobile Insurance Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 424, 160 A.L.R. 1251; 7 Appleman's Insurance Law and Practice 92, § 4322.

Concededly Kenneth L. Ross was not using the automobile at the time of the

injury in the sense that he was driving or directing its movements, but it is the contention of the appellees that he was using the automobile by "loading" the articles purchased by the Richards and the act of closing the door consummated the loading, thereby bringing him within the definition of an insured under Commercial's policy. If the policy be so construed, appellant would have the primary obligation to defend and pay. But we do not think the facts related bring him within the protection of the policy.

Loading is interpreted as including those acts which are necessary to place the goods in or upon the automobile to a position of rest. St. Paul Mercury Indemnity Co. v. Standard Accident Insurance Co., 216 Minn. 103, 11 N.W.2d 794; Bobier v. National Casualty Co., 143 Ohio St. 215, 54 N.E.2d 798.

The most exhaustive treatise on the subject which has come to our attention appears in the annotation to the case of Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., supra, 160 A.L.R. at page 1259, et seq. The annotator points out that with respect to the "loading and unloading" clauses in insurance policies, there are two theories—so called: (1) The "coming to rest" doctrine, and (2) The "complete operation" doctrine. With respect to the first, it is stated at page 1264:

"All cases applying the 'coming to rest' doctrine involve the unloading of an automobile. No case has been found dealing with the term 'loading' of an automobile. However, applying the 'coming to rest' doctrine logically to the latter situation, the rule probably can be stated that under this view, the term 'loading' covers the period of time and events beginning when the articles are started in movement which movement is not interrupted or broken by rest or pauses, until the articles are placed in or on the motor vehicle."

As regards the second, the following appears at page 1267:

"Giving the 'loading and unloading' clause a somewhat broader construction than it has under the 'coming to rest' doctrine, some courts take the view that such clause covers the entire process involved in the movement of goods from the moment when they are given into insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. This theory * * * may appropriately be called the 'complete operation' doctrine * * *."

We see no occasion to adopt either theory as applied to the facts in this case for the simple reason that under neither theory would coverage be afforded under Commercial's policy. When the injury sustained is a direct result of such loading the coverage must be sustained. Had the injury occurred as Kenneth L. Ross placed the goods in the automobile, then the policy would have been subject to the construction placed on it by the learned trial court. However, Ross had consummated the act of "loading"—placing the goods in the automobile. During an interim period of three to four minutes after completing this "loading" a conversation between Mrs. Richard and Kenneth L. Ross about an entirely different matter ensued. When the conversation ceased and the Richards were preparing to depart, the door was closed, resulting in the injury. The loading began at the moment the goods were removed from their repository in the nursery and continued until they were loaded in the automobile. The essential fact of loading had been terminated when the accident occurred. With the goods at rest in the automobile and Ross beginning pursuit of a different business, the act of loading had been completed and the "use", therefore, of the automobile within the quoted provisions of Commercial's policy had also been terminated. The closing of the door was an independent act entirely outside of the act of loading the purchased articles

and the term cannot be extended to bring the accident within the coverage of Commercial's policy.

Appellee calls attention to the fact that the appellant's brief does not conform to Supreme Court Rule 9, Code of 1940, Title 7, Appendix. The rule does require that the brief and argument refer to assignments of error specifically insisted on, which requirement was not altogether complied with by appellant. Rule 9, however, is directory only, and we may exercise our discretion in considering appellant's brief, which we have done in this case. Guy v. Lancaster, 250 Ala. 287(9), 34 So.2d 499.

In the view we take of the case, it becomes unnecessary to treat of the other assignments of appellant advanced as error to reverse.

Finally, we consider the cross-assignment of Honorable William R. Lauten as guardian ad litem for Suzanne Michele Richard, claiming error in the decree of the trial court awarding him only $350. He contends that the amount was inadequate. True, there was testimony of a reputable attorney of the Mobile Bar that a reasonable fee would be higher than the amount fixed by the court, and the minimum fee on a rate basis under the Mobile Bar Association Fee Bill supports this evidence. Nevertheless, the statute (Code 1940, Title 7, § 180) sets up no standard by which the ascertainment of a reasonable fee for a guardian ad litem is to be made. The court has a right to determine the fee by the exercise of its individual judgment upon a consideration of the case as developed by the record without being bound to accept the opinion of witnesses. Walker v. Walker, 256 Ala. 195, 54 So.2d 281, and cases therein cited. The matter of fixing the fee rests largely within the discretion of the trial court, subject only to correction for abuse of discretion. Thompson v. Bryant, 251 Ala. 566, 569, 38 So.2d 590. In view of the circumstances of the case, we cannot say that the trial court grossly abused its discretion in so fixing the amount of the fee.

Cross-appellant has also prayed for the fixing of an additional fee for representing his ward on this appeal. The court entertains the view that an additional fee of $200 under the circumstances of the case would be reasonable for the guardian ad litem's services in this court, which shall be assessed as a part of the costs of this appeal, and it is so ordered. Ex parte Taylor, 251 Ala. 387, 37 So.2d 656.

The decree below is reversed and a decree here will be rendered holding that appellant, Commercial Standard, is not liable under the circumstances related. As to all other matters adjudicated the decree is affirmed.

Affirmed in part and in part reversed and rendered.

LIVINGSTON, C. J., and STAKELY and COLEMAN, JJ., concur.

GOODWYN and MERRILL, JJ., dissent as to the order of reversal.