161 So.2d 789

**PACIFIC INDEMNITY COMPANY**

v.

**RUN–A–FORD COMPANY, Inc., et al.**

6 Div. 712.

Supreme Court of Alabama.

March 12, 1964.

Mudd, Baker & McDaniel and London, Yancey, Clark & Allen, Birmingham, for appellant.

Corretti & Newsom, Birmingham, for Run-A-Ford Co.

Hobart McWhorter, Jr., White, Bradley, Arant, All & Rose, Birmingham, for Porter Clothing Co.

COLEMAN, Justice.

This is an appeal by an automobile liability insurer from a decree declaring that insurer is obligated, by the terms of its policy, (1) to defend an action for personal injury which an injured party, hereinafter referred to as plaintiff, had brought against insured, and (2) to pay, up to the policy limits, any final judgment which might be rendered in favor of plaintiff and against insured in said action.

The complainant in this suit for declaratory decree is a corporation engaged in the business of delivering packages for various merchants. The respondent, Porter, operates a department store. Complainant, in accord with its contract with Porter, undertook to deliver a package of clothing to the residence of plaintiff.

We outline the pertinent facts as we understand them to be shown by evidence presented and facts stipulated on the trial of the declaratory suit. The dimensions of the package were 17 by 12 by 2 inches. An employee of complainant carried the package in the insured delivery truck to plaintiff's residence where the employee removed the package from the truck, walked to the front door of plaintiff's house, and, after ringing the door bell and finding no one at home, entered the screened-in porch and placed the package on the floor of the porch in front of the front door. From the time the employee removed the package from the truck until he placed the package on the floor in front of the door, the package did not leave the grasp of the employee's hands. After placing the package on the floor, the employee drove away in the truck and did not return to plaintiff's residence.

Thirty or more minutes after the employee drove off, plaintiff returned home. Before she left home, plaintiff had noticed a hand bill or paper in the screen door which opened onto the front porch. On returning home, plaintiff entered at the rear of the house and went to the front. As she started out the wooden door of the living room onto the front porch a package was leaning against the door. As plaintiff opened the door and started out, the package blocked the opening and caused plaintiff to fall and be injured.

To recover for her injury, plaintiff commenced an action at law against complainant and Porter. In her complaint, plaintiff alleged that an employee of complainant left the package in the doorway in such a manner that the doorway was blocked, and that her injuries were proximately caused by the negligence of complainant's employee in so leaving the package in plaintiff's doorway.

Complainant commenced the instant suit to obtain a declaration of insurer's obligations under the policy of insurance it had issued to complainant. As we understand the briefs, there is no controversy as to whether complainant, Porter, and complainant's employee were insured under the policy. We understand that all three were covered. We may sometimes refer to them separately or collectively as the insured.

In pertinent part the policy recites: ..

"Occupation of the named insured is *Package Delivery.*" (Emphasis Supplied.)

Insurer "Agrees . . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

Insurer first contends that the injury suffered by plaintiff is not an injury arising out of the use or unloading of the insured truck and, therefore, that insurer is not obligated to pay such sums as insured may become legally obligated to pay as damages because of plaintiff's injury; and that the court erred in holding that insurer is obligated to pay such sums.

A comprehensive annotation on the loading and unloading clause appears in 160 A.L.R. 1259, where pertinent cases are cited and discussed.

Insurer relies strongly on Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., 272 Ala. 357, 131 So.2d 182, where this court held that the loading clause did not cover the injury when an automobile door was closed on a child's hand by a person who had placed certain plants in the automobile. This court saw "no occasion to adopt either" of the so-called theories into which cases on loading and unloading have been classified. The court said:

" . . . The closing of the door was an independent act entirely outside of the act of loading the purchased articles and the term cannot be extended to bring the accident within the coverage of Commercial's policy." (272 Ala. at pages 361, 362, 131 So.2d at page 185)

In the case at bar, the injury was allegedly caused by the negligent placing of the parcel. The cases seem to agree that the process of unloading includes at least the entire operation during which the article is lifted and removed from the vehicle up to the moment when the article has actually come to a place of rest outside the vehicle and the connection of the vehicle with the process of unloading has ceased. In the case at bar, we think unloading began, when the insured lifted the parcel from the truck, and ended when insured placed the parcel in front of plaintiff's door. The causative negligence charged is negligence which occurred during the unloading of the truck. In that respect, the instant case differs from Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., supra, where the causative negligence occurred during "an independent act entirely outside the act of loading." The difference is sufficient to prevent the last cited case from controlling here.

Other cases cited by appellant may be distinguished or are not in point, as we understand them, and will not be discussed, except American Casualty Co. v. Fisher, 195 Ga. 136, 23 S.E.2d 395, 144 A.L.R. 533, where the court held that the unloading clause did not cover an injury which occurred when insured removed an adding machine from a table on which he had placed another adding machine, which he was delivering. The injury allegedly resulted from the negligence of insured in removing the machine from the table.

There are two statements in the Fisher opinion which lead us to the view that Fisher should not be followed in the instant case. In the first statement, with reference to policy provisions similar to those here considered, the Supreme Court of Georgia quoted from Zurich &c. Co. v. American Mutual Liability Insurance Co., 118 N.J.L. 317, 192 A. 387: "These words are plain and unambiguous, and delimit with understandable certainty the liability imposed upon the insurer." We incline to the view that the phrase, "loading and unloading,"

is ambiguous. That view has been stated as follows:

"The fact that construction of the 'loading and unloading' clauses of these insurance contracts has provoked such a conflict in the decisions of the courts as to establish two rules or theories of construction, that is, the 'coming to rest' theory and the 'complete operation' rule or theory, shows inescapably that the language employed is considered ambiguous and susceptible of more than one construction; hence should be interpreted liberally in favor of the insured and strictly against the insurer who wrote the policy. . . . " American Employers' Ins. Co. v. Brock, Tex.Civ. App, 215 S.W.2d 370, 373.

The second statement in Fisher to which we refer is:

" . . . Unless a policy in such a case made it clear that a liability of such a different nature was intended to be assumed, or risks of such different character embraced, we should be very slow to import into it those views. . . . " (195 Ga. at page 142, 23 S.E.2d at page 398)

The rule in Alabama has been stated to be that insurance policies will be construed most strongly against the insurer. Trinity Universal Insurance Co. v. Wills, 273 Ala. 648, 650, 143 So.2d 846. The second statement quoted from the Fisher case does not seem to be in accord with the Alabama rule. We therefore conclude that we should not follow the rule of the Fisher case.

By the instant policy, insurer agreed to pay on behalf of insured sums which insured shall become legally obligated to pay because of bodily injury "arising out of" the use, including unloading, of the truck.

" . . . The words 'arising out of' involve the idea of causal relationship between the employment (unloading) and the injury, while the term 'in the course

of' relates more particularly to the time, place and circumstances under which the injury occurred. The phrases are not synonymous; . . . " (Par. Supplied.) Wooten v. Roden, 260 Ala. 606, 610, 71 So.2d 802, 805. The instant policy does not require that the injury occur during or in the course of the unloading. The insurer did not so limit its liability.

■ Plaintiff's injury here allegedly resulted from negligent placing of the package. The placing of the package was part of the unloading. We are of opinion that the injury thus allegedly arose out of the unloading, and that, because the policy covered injuries arising out of the unloading, the policy covered insured's liability to pay for the injury here. It will be understood, of course, that insured's liability to pay is not being determined in the instant suit, and that insured will be liable to pay for plaintiff's injury only if the evidence, presented on the trial of plaintiff's action against insured, shows that the negligent placing of the package occurred as alleged and proximately caused plaintiff's injury.

At least two cases support this view. In Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716, insured delivered to plaintiff's home a roll of linoleum and left it standing upright at the door. Later the linoleum fell on and injured plaintiff. In holding the insurer liable under an automobile liability policy, which provided that use included loading and unloading, the court said:

" . . . The question, however, is not what the defendant intended or the plaintiffs expected but rather what intent is expressed in the language used in the automobile policy. It was certainly within the contemplation of both the insurer and the plaintiffs that the truck would be used for commercial purposes in connection with the plaintiffs' department store. The vehicle is described in the automobile policy as a '½-ton Pickup Truck.' In the normal

course of making deliveries, the merchandise delivered is customarily placed where the purchaser can most conveniently get it and use it. In this instance, that place was at the front door of the Rindfleisch home. A continuous operation was anticipated. The linoleum was to be delivered, a portion used and the rest picked up by the plaintiffs and returned to the store. It is reasonable to assume that the operation of unloading did not end until the linoleum was placed where it could be used by its purchaser. If the driver, in carrying forward this mission, was negligent in leaving it where it could, and did, cause injury, that negligent act was a part of the operation of unloading the truck and had a direct causal relation with the truck and the unloading operation. Such an interpretation of the contract requires no strained construction and does no violence to the fair meaning of the terms used." (141 Conn. at page 396, 106 A.2d at page 719)

In American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co., D.C., 179 F.Supp. 699, an action for declaratory judgment, insured delivered nine pieces of sheetrock and placed it on edge in the basement of plaintiff's home. About four hours later, while plaintiff was standing near the sheetrock, it fell on her and injured her leg. Plaintiff sued and alleged that " ' . . . because of its negligent and unsafe stacking, the sheet rock toppled and fell upon' " her.

The court noted that insurer contended that the automobile policy would afford no coverage because the accident did not occur during the unloading operation, but occurred several hours after the truck had left the scene. With reference to Liberty Mutual Ins. Co. v. Hartford Acc. & Ind. Co., 7 Cir., 251 F.2d 761, the court said: "The key words 'arising out of' were not discussed." The opinion continues:

"On the other hand, a number of courts have noted that the words 'arising out of' are broad, general and comprehensive, effecting broad coverage; (Citations Omitted.)

"Workmen's compensation cases have taught us that the words 'arising out of' have a very different meaning from the words 'in the course of'. (Citations Omitted.) If the draftsman of the policy had intended to limit the coverage to accidents which occur in the course of the unloading, he could easily have done so." (179 F.Supp. at pages 703, 704)

The court noted the Maryland rule that ambiguous terms of an insurance policy are to be construed most favorably to the insured and concluded that the policy covered the sheetrock injury, saying:

"Of course, the facts of the case must establish a causal relationship between the use and unloading of the vehicle and the injuries inflicted. (Citations Omitted.) The Bernsteins may not be able to prove, in their State court suit, that any negligence on the part of Murphy in delivering the sheetrock was a proximate cause of her injury; but if they do prove that the injury was caused by the manner in which the sheetrock was set up in the basement, such proof will satisfy the causation requirement, and insurer will be obligated to pay the damages awarded up to the limits of its automobile policy. In the meantime, insurer is obligated to defend the State court action." (179 F.Supp. at page 704)

For the reasons which we have undertaken to state, we are of opinion that the court in the case at bar did not err in holding that insurer is obligated to pay, within policy limits, any judgment rendered for plaintiff and against insured in the action at law.

Insurer's second contention is that the court erred in declaring that insurer is obligated to defend plaintiff's action at law against insured.

Insurer argues that the correct rule, for determining whether or not insurer is obligated to defend, is as follows:

*"THE OBLIGATION OF AN INSURER IS MEASURED BY THE AVERMENTS OF THE COMPLAINT IN THE SUIT FOR DAMAGES WHICH THE INSURER IS CALLED UPON TO DEFEND, AND WHERE THERE IS NO ALLEGATIONS THAT THE PLAINTIFF'S INJURY WAS PROXIMATELY CAUSED BY NEGLIGENCE OF THE DEFENDANTS IN THEIR USE OF A MOTOR VEHICLE, OR IN THE UNLOADING THEREOF, AND (sic) INSURER IS UNDER NO OBLIGATION TO PROVIDE A DEFENSE UNDER AN AUTOMOBILE LIABILITY INSURANCE POLICY AVAILABLE TO THE DEFENDANTS."*

Insurer says that, in the instant case, the allegations of the complaint filed by plaintiff in the action at law against insurer, do not show that plaintiff's injury resulted from the use or unloading of the insured truck, and, therefore, under the correct rule, insurer is not obligated to defend the action.

The policy in the case at bar provides as follows:

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

We have not found, in the complaint in the action at law against insured involved in the instant case, any reference to a vehicle of any sort. The negligence charged is negligence in leaving the package in the doorway. The complaint does not disclose whether or not any truck of insured was used in making delivery of the package. Facts not alleged in the complaint must be looked to in order to prove that plaintiff's injury was an injury arising out of the unloading of the insured truck.

Insurer's contention, as we understand it, is that before insurer is obligated to defend plaintiff's action against insured, insurer's obligation to defend must appear from the naked allegations of plaintiff's complaint, and that facts not alleged in the complaint cannot be looked to in order to impose on insurer the duty to defend.

In support of its contention insurer cites American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677, which was a suit for declaratory decree to determine the liability of an insurer to defend an action against the insured. This court affirmed the decree which declared that the provisions of the contract of insurance made it the duty of insurer to defend the action brought against the insured.

Examination of the record filed in this court in the Agricola case, supra, discloses that no evidence, other than certain letters, was taken and that the cause was submitted on the original bill of complaint, the answer of insurer, the answer of plaintiff, and the letters which do not appear to state facts on which the cause of action was based. This court appears to have considered also, in addition to the facts alleged in plaintiff's complaint in the action at law, the facts alleged in the bill of complaint in the suit in equity for declaratory decree, because the opinion states:

"We do not know what the facts will show, other than as alleged in the complaint and bill. The bill shows

that insured had for the years 1931, 1932, 1933, 1934, 1935 and 1936 issued to complainant a similar policy, except that for the years 1931, 1932 and 1933 the policy had no rider disclaiming coverage for occupational diseases." (236 Ala. at page 538, 183 So. at page 679)

It is certain that the trial court, in Agricola, considered facts in addition to those alleged in the complaint in the action at law because the decree of the trial court states:

"Upon further consideration this Court ascertains and finds that the averments of paragraphs of the original bill of complaint numbered 1 to 16, both inclusive, and 18 and 19, are true, *and the facts so found to be true constitute the facts upon which this decree granting the complainant relief is based*; . . .." (Emphasis Supplied.)

■ We are of opinion that Agricola is not authority for the proposition that insurer's duty to defend must be determined solely from the facts alleged in the complaint in the action against insured. Facts not alleged in the complaint against insured appear to have been considered by both the trial court and this court in deciding that insurer owed the duty to defend. This court said:

"The purpose here, as we have said, is to determine whether the complaint is based on a cause of action for such an injury. . . ." (236 Ala. at page 538, 183 So. at page 679)

In the case at bar, insurer, by its policy, agreed, "With respect to such insurance as is afforded by this policy for bodily injury liability," to defend "any suit against insured alleging *such injury*." We have undertaken to show that the complaint in the action at law, with respect to the insurance afforded by the instant policy, does allege "such injury." We are of opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief such as the instant case.

That conclusion is reached by the following reasoning. The question is: Is insurer's agreement, to defend any suit "alleging such injury," to be construed as an agreement to defend only a suit in which the complaint, in itself and without the aid of other facts, contains allegations sufficient to establish the conclusion that the injury alleged is covered by the policy; or, is the agreement to be construed as one to defend a suit in which the complaint alleges an injury which is within the policy coverage but can be shown to be within the coverage only when facts, which do exist but are not alleged in the complaint, are taken into consideration? The policy does not provide which construction shall be adopted. Under the rule that the policy must be liberally construed in favor of the insured, the latter construction must be adopted. Under the latter construction, facts not alleged in the complaint may be considered.

In the case at bar, the trial court considered facts not alleged in the complaint. We are of opinion that this was not error.

■ The facts shown on the trial of the instant declaratory suit, are sufficient, as we have undertaken to show, to support the conclusion that plaintiff's action at law is an action alleging an injury covered by the policy. It follows then, that the court did not err in declaring that insurer is obligated to defend plaintiff's action against insured in the instant case.

There is authority which supports insurer's contention that the bare allegations of the complaint in the action for damages determine insurer's duty to defend. See Wilson. v. Maryland Casualty Co., 377 Pa. 588, 105 A.2d 304, 50 A.L.R. 2d 449, and other cases discussed in the annotation.

The annotator also cited cases which support our conclusion, among them, London Guarantee & Accident Co. v. White & Bros., 188 Va. 195, 49 S.E.2d 254, where the court, in holding insurer liable to defend said:

"While the duty to defend is, in the first instance, to be determined by the allegations of the notice of motion, yet if those allegations leave it in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is at its own risk; and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend. * * *" (188 Va. at pages 199, 200, 49 S.E.2d at page 256)

In Hardware Mut. Casualty Co. v. Hilderbrandt, 10 Cir., 119 F.2d 291, 299, 300, the court held insurer liable to defend and said:

" . . . The accidental injuries were sustained in circumstances which brought the liability of the insured well within the coverage of the policy, and the company had knowledge of the material facts. Fairly construed, the insurance contract obligated the company to defend in the name and on behalf of the insured any suit or claim for damages sustained by such parties, and, within the maximum amount fixed by the policy, to indemnify him against loss. The actual facts which gave rise to such obligation on the part of the insured were brought to its attention, and the insured demanded that it defend the actions. It was his right to be protected. He had purchased that right for a valuable consideration, and he demanded that the company fulfill its contract. He was not obligated by the contract to sign the nonwaiver agreement. But the company elected to close its eyes to the actual facts of which it had knowledge, and to look exclusively to the ill-founded allegation in the petition in each case that the injured person was an employee. In the brief of the insured it is said:

" 'A simple illustration will demonstrate the unsoundness of the position taken by opposing counsel: A owns two automobiles, a Ford and a Nash. The Ford is covered by the policy of the company but the Nash is not. A, while driving the Ford, negligently injures a third party and this party brings an action for damages alleging that A was driving the Nash. A notifies the company of the accident, furnishes it a copy of the petition, and explains to it that the car actually involved in the accident was the Ford and not the Nash. The company shuts its eyes to the information given to it by A as to the car actually involved in the accident, relies solely upon the allegations of the petition, makes no investigation of the facts and circumstances, denies liability and refuses to defend except upon a nonwaiver which A declines to give. A undertakes the defense of the action with counsel of his own and negotiates a prudent settlement for a stipulated sum which he pays, and then makes demand upon the company to reimburse him which it declines to do, taking the position that there is no coverage as reflected by the allegations of the petition.'

"The hypothetical case appropriately illustrates with emphasis the scope and effect of the contention of the company. Upon further consideration, we think the contention must fail."

We are of opinion that the two cases last cited rest on the better reasons and that the court did not err in declaring insurer liable to defend, on behalf of insured, the action brought by plaintiff against insured in the case at bar.

Affirmed.

SIMPSON, GOODWYN, MERRILL, and HARWOOD, JJ., concur.