DONALDSON, Judge.
Cool Temp, Inc. (“Cool Temp”), appeals from a summary judgment entered by the Jefferson Circuit Court, Bessemer Division (“the trial court”), holding that Pennsylvania National Mutual Casualty Insurance Company (“PNMCIC”) was not obligated under a policy of insurance to defend Cool Temp in an action in tort and contract brought against Cool Temp by Gregory L. *450 Pilkerton, a Cool Temp employee. We affirm.

Facts

On October 24, 2007, Pilkerton sustained injuries when he fell through an attic while servicing a heating, ventilation, and air-conditioning (“HVAC”) system installed by Cool Temp at a residence in Bessemer. At the time of the incident, Pilkerton was an employee of Cool Temp. Shortly following the accident, Pilkerton began receiving worker’s compensation benefits from Cool Temp as a result of the incident.
On October 26, 2009, Pilkerton filed suit (“the underlying suit”) in the trial court against Cool Temp, three named employees of Cool Temp, and various fictitiously named parties.[1] In his complaint initiating the underlying suit, Pilkerton asserted both tort and contract claims against Cool Temp and the fictitiously named parties, including claims of negligence and wantonness in the design, installation, sale, and distribution of the HVAC system; breach of the Alabama Extended Manufacturer’s Liability Doctrine; and breach of warranty. Pilkerton also alleged that three named employees of Cool Temp and the fictitiously named parties breached a duty to provide Pilkerton with a safe workplace. The record reveals that at least one of the three named employees had been served with the summons and complaint before the entry of the summary judgment at issue in this appeal and that Pilkerton never substituted actual parties for the fictitiously named parties. In his complaint, Pilkerton acknowledged that he had been an employee of Cool Temp on the date of the accident.
Cool Temp had a general-liability insurance policy (“the policy”) with PNMCIC that was in effect at the time of the incident. The pertinent portion of the policy concerning coverage for bodily injury and property damage states:
“SECTION I — COVERAGES “COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
“1. Insuring Agreement “a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies....
“2. Exclusions
“This insurance does not apply to:
[[Image here]]
“d. Workers’ Compensation and Similar Laws
“Any obligation of the insured under a workers’ compensation, disability benefits or unemployment compensation law or any similar law.
“e. Employer’s liability ‘Bodily injury[1] to:
“(1) An ‘employee’ of the insured arising out of and in the course of:
“(a) Employment by the insured; or
“(b) Performing duties related to the conduct of the insured’s business; or ...
“This exclusion applies:
“(1) Whether the insured may be liable as an employer or in any other capacity; and
“(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
*451 [[Image here]]
“SECTION V — DEFINITIONS:
[[Image here]]
“3. ‘Bodily injury’ means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.”
(Capitalization in original.)
On November 8, 2009, Cool Temp notified PNMCIC of the underlying suit, requested legal representation under the policy, and provided PNMCIC with a copy of Pilkerton’s complaint. PNMCIC subsequently declined Cool Temp’s request to provide it with a defense to the underlying suit and for indemnification as to Pilker-ton’s claims on the basis that the terms of the policy excluded claims asserted against Cool Temp by an employee. On December 17, 2009, Cool Temp filed a motion to dismiss the underlying suit, arguing that the exclusivity provisions of § 26-5-52, Ala.Code 1975, precluded Cool Temp from being held liable to Pilkerton for tort and contract claims because Pilkerton’s remedies were solely governed by the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975.[2] In response to the motion to dismiss, Pilkerton asserted that Cool Temp was liable under the “dual capacity” doctrine, under which an employer normally shielded from civil liability pursuant to § 25-5-52 “may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.” 2A Arthur Larson, The Law of Workmen’s Compensation § 72.80, p. 14-112 (1976). On April 6, 2010, the trial court denied Cool Temp’s motion to dismiss.
On April 19, 2010, Pilkerton filed a separate action against Cool Temp in the trial court, in which he sought worker’s compensation benefits. Pilkerton alleged in his complaint initiating the worker’s compensation action that the October 24, 2007, accident arose out of and in the course of his employment with Cool Temp. The trial court consolidated Pilkerton’s two lawsuits against Cool Temp for discovery purposes only.
On March 1, 2011, Cool Temp, through counsel, again submitted a written request to PNMCIC to provide Cool Temp with a defense and indemnity as to Pilkerton’s tort and contract claims pursuant to the policy. On April 7, 2011, PNMCIC again declined the request.
On October 13, 2011, Cool Temp filed a third-party complaint against PNMCIC in the underlying suit in which it alleged a claim of “bad-faith breach of contract” against PNMCIC based on PNMCIC’s refusal to provide Cool Temp with a defense and indemnity as to Pilkerton’s claims in the underlying suit. In its third-party complaint, Cool Temp requested compensatory damages, punitive damages, and an award of attorney fees for prosecuting the third-party action.
Cool Temp filed a motion for a summary judgment as to Pilkerton’s claims in the underlying suit, asserting that Pilkerton’s tort and contract claims were barred by the exclusivity provisions of the Act. On May 27, 2012, the trial court entered a summary judgment in favor of Cool Temp *452 on all of Pilkerton’s claims against it in the underlying suit. In its judgment, the trial court stated:
“The gravamen of [Pilkerton’s] position is that he is entitled to recover from Cool Temp in tort despite the exclusivity of Workers’ Compensation as a remedy under ... § 25-5-52[, Ala.Code 1975,] because either Cool Temp acted with wantonness or it acted in a ‘dual capacity’ in which its involvement with [Pilker-ton’s] injuries was so far removed from the employer-employee relationship between the parties that the relationship should not be considered. The facts as stipulated by the parties do not support either theory.
“On the facts as stipulated by the parties, Cool Temp has presented in its defense the stipulated employer-employee relationship with [Pilkerton] and § 25-5-52’s bar to claims in tort. After completing discovery in this case, [Pilk-erton] is unable to offer, or even proffer, sufficient evidence of wantonness or such a remove between Cool Temp’s role in [Pilkerton’s] accident and its role as his employer that a fair minded trier of fact could conclude that § 25-5-52 should not apply.”
The summary judgment did not address Pilkerton’s claims against the Cool Temp employees named as defendants in his complaint, including the employee who had been served with process, nor did it mention the claims against the fictitiously named parties. Because Pilkerton’s claims against Cool Temp had been resolved in Cool Temp’s favor and were no longer pending, the issue whether PNMCIC was obligated to indemnify Cool Temp was moot. PNMCIC and Cool Temp filed cross-motions for a summary judgment in the third-party action on the issue of whether PNMCIC was obligated to reimburse Cool Temp in the amount of $27,121.50 for the litigation expenses Cool Temp had incurred as a result of providing its own defense in the underlying suit until it received a judgment in its favor. The trial court held a hearing on the motions on September 6, 2012. On October 10, 2012, the trial court entered a summary judgment in favor of PNMCIC in the third-party action. On November 13, 2012, Cool Temp filed a notice of appeal to our supreme court. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Because neither of the trial court’s summary-judgment orders addressed Pilk-erton’s claims against other defendants in the underlying suit, this court questioned whether the appeal had been taken from a final, appealable judgment. This court requested that the parties submit letter briefs concerning whether the judgment was final. Counsel for Cool Temp and PNMCIC asserted that the third-party claims of Cool Temp against PNMCIC had been severed from Pilkerton’s claims against the other defendants in the underlying suit and that the summary judgment had disposed of all the claims by all parties. After a review of the record, however, this court concluded that Pilkerton’s claims against the other defendants in the underlying suit remained pending and that there was nothing in the record establishing that the third-party claims had been severed from the remaining claims in the underlying action.[3] Although, under Rule *453 4(f), Ala. R. Civ. P., the summary-judgment orders in this case would constitute a final judgment for purposes of appellate review if there had been no other served defendants, the record reveals that service of process had been obtained on one of the employees of Cool Temp named as a defendant. Because the claims against that employee of Cool Temp had not been adjudicated, the judgment could not be considered final absent a certification pursuant to Rule 54(b), Ala. R. Civ. P. Consequently, this court remanded the cause to the trial court with instructions to determine whether the summary judgment in favor of PNMCIC should be amended by certifying the judgment as final pursuant to Rule 54(b). On remand, the trial court amended its judgment to state that, “[a]s there is not just reason for delay, this Court amends its October 10, 2012 judgment in favor of [PNMCIC], and hereby enters judgment for [PNMCIC] certifying it as final under Rule 54(b) of the Alabama Rules of Civil Procedure.” Because the trial court in its amended judgment has made “an express determination that there is no just reason for delay” in entering the summary judgment in favor of PNMCIC and has certified that judgment as final, and because it appears that Cool Temp’s third-party claims are not intertwined with Pilkerton’s remaining claims, the judgment before this court on appeal is a final judgment.

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004). Further,
*454 “[w]hen a trial court interprets an insurance policy as a matter of law, that interpretation is subject to a de novo review. Upton v. Mississippi Valley Title Ins. Co., 469 So.2d 548, 555 (Ala.1985); Aetna Life Ins. Co. v. Hare, 47 Ala.App. 478, 256 So.2d 904, 911 (1972). However, when evidence is presented ore tenus in a nonjury case, a judgment based on that ore tenus evidence will be presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong or against the great weight of the evidence. Eagerton v. Second Econ. Dev. Coop. Dist. of Lowndes County, 909 So.2d 783, 788 (Ala.200[5]). Nevertheless, this rule is not applicable where the evidence is undisputed or where the material facts are established by undisputed evidence. Salter v. Hamiter, 887 So.2d 230, 233-34 (Ala.2004). Additionally, when the trial court ‘improperly applies the law to the facts, the presumption of correctness otherwise applicable to the trial court’s judgment has no effect.’ Ex parte Bd. of Zoning Adjustment of Mobile, 636 So.2d 415, 418 (Ala.1994).”
Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1009 (Ala.2005).

Discussion

On appeal, Cool Temp argues that the trial court incorrectly determined that PNMCIC did not have a duty under the policy to provide Cool Temp a defense to the tort and contract claims asserted against it by Pilkerton. As a threshold matter, we note that, in its third-party complaint, Cool Temp asserted only a claim of “bad-faith breach of contract” against PNMCIC arising from its refusal to provide Cool Temp a defense in the underlying suit, articulated the elements of bad faith, and requested compensatory and punitive damages and an award of attorney fees for prosecuting the third-party action. Cool Temp argues for the first time in its reply brief on appeal that its claim against PNMCIC should be construed as asserting “breach of contract” rather than “bad-faith breach of contract.”
“This court does not consider issues raised for the first time on appeal. Somers v. McCoy, 777 So.2d 141, 143 (Ala.Civ.App.2000) (citing Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992); and S.W.M. v. D.W.M., 723 So.2d 1271 (Ala.Civ.App.1998)). Our review ‘is restricted to those arguments considered by the trial court.’ Somers, 777 So.2d at 143 (citing Lyons v. Porter, 539 So.2d 298 (Ala.Civ.App.1988)).”
Singer Asset Fin. Co. v. Connecticut Gen. Life Ins. Co., 975 So.2d 375, 382 (Ala.Civ.App.2007). Cool Temp did not amend its pleadings to add a breach-of-contract claim, nor did it raise this argument in its motion for a summary judgment or in response to PNMCIC’s motion for a summary judgment. Thus, this issue is not properly before this court.
However, as a practical matter, determining whether PNMCIC breached the policy is a threshold issue that must be resolved in evaluating the validity of Cool Temp’s bad-faith claim. In a bad-faith case, the plaintiff has the burden of proving:
“‘(a) an insurance contract between the parties and a breach thereof by the defendant;
“ ‘(b) an intentional refusal to pay the insured’s claim;
“‘(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“‘(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
*455 ‘“(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.’ ”
Ex parte Alfa Mut. Ins. Co., 799 So.2d 957, 962 (Ala.2001) (quoting National Security Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982)) (emphasis omitted).
“The tort of bad faith has been defined as follows:
“‘Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. [Citations omitted.] Breach of the covenant provides the injured party with a tort action for “bad faith” notwithstanding that the acts complained of may also constitute a breach of contract. [Citations omitted.]’
“Chavers v. National Sec. Fire & Casualty Co.,-405 So.2d 1, 4 (Ala.1981) (quoting Childs v. Mississippi Valley Title Ins. Co., 359 So.2d 1146 (Ala.1978)) (emphasis added).
“... [A] bad faith claim will lie for a failure to provide the benefits contracted for in an insurance policy. See Chavers v. National Sec. Fire & Casualty Co., 405 So.2d 1, 4 (Ala.1981); Sanford v. Western Life Ins. Co., 368 So.2d 260, 262 (Ala.1979); Childs v. Mississippi Valley Title Ins. Co., 359 So.2d 1146, 1152 (Ala.1978). In Safeco Insurance Co. of America v. Sims, 435 So.2d 1219, 1222 (Ala.1983), this Court stated that a ‘cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of the facts which would reasonably lead the insured to a discovery of the bad faith refusal.’ Furthermore, in Vincent v. Blue Cross-Blue Shield of Alabama, 373 So.2d 1054, 1062 (Ala.1979), Justice Jones, in his special concurrence, noted that ‘for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of [a lack of] a reasonable basis for a denial-’ (Citation omitted.)”
Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661, 667-68 (Ala.1995).
In the present case, Cool Temp asserts that because the claims asserted against it in the underlying suit filed by Pilkerton sufficiently invoked the duty of PNMCIC to provide it with a defense under the terms of the policy, PNMCIC should reimburse Cool Temp for the defense costs it incurred until the trial court entered a summary judgment in its favor in the underlying suit. PNMCIC asserts that it did not breach the policy because, it asserts, it did not have a duty under the policy to defend Cool Temp in the underlying suit and, thus, “[t]here can be no claim by Cool Temp for bad-faith breach of contract ... against [PNMCIC] if Cool Temp’s breach of contract claim fails.” As noted above, breach of contract is an element of a bad faith claim. “In order to establish a breach-of-contract claim, a plaintiff must show ‘(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.’ ” Ex parte Alfa, 799 So.2d at 962 (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995)).
As our supreme court has previously recognized:
“ ‘It is well settled “that [an] insurer’s duty to defend is more extensive *456 than its duty to [indemnify].” United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala.1985) (citations omitted). Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. Id. at 1168. If the allegations of the injured party’s complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. Ladner & Co. v. Southern Guar. Ins. Co., 347 So.2d 100, 102 (Ala.1977) (citing Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948)). However, “[t]his Court ... has rejected the argument that the insurer’s obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured.” Ladner, 347 So.2d at 103. In Pacific Indemnity Co. v. Run-A-Ford Co., 276 Ala. 311, 161 So.2d 789 (1964), this Court explained:
“ ‘ “We are of [the] opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence. ...”
“ ‘276 Ala. at 318, 161 So.2d at 795; see Ladner, 347 So.2d at 103 (quoting this language). “[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured.” Blackbum v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661, 668 (Ala.1995) (citing United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala.1985)) (other citations omitted). When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. Blackburn, 667 So.2d at 670 (citing Tapscott v. Allstate Ins. Co., 526 So.2d 570, 574 (Ala.1988)).’
“Acceptance Insurance Co. v. Brown, 832 So.2d 1,14 (Ala.2001). In Tanner v. State Farm Fire & Casualty Co., 874 So.2d 1058, 1064-65 (Ala.2003), this Court stated:
[[Image here]]
“‘... If the allegedly injured person’s complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between [the injured person] and the insured prove a covered accident or occurrence. Acceptance Ins. Co. [v. Brown, 832 So.2d 1 (Ala. 2001) ]; Run-A-Ford, supra; Lad-ner, supra. ... ’
“This broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to be construed liberally in favor of the insured and strictly against *457 the insurer. American States Ins. Co. v. Martin, 662 So.2d 245 (Ala.1995); Tyler v. Insurance Co. of North America, 331 So.2d 641 (Ala.1976)
Hartford, 928 So.2d at 1009-11. However, if proof of the facts alleged in the governing pleading would necessarily establish a noncovered occurrence, the insurer would not be obliged to defend. See Ladner & Co., 347 So.2d at 103. “Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action.” Hartford, 928 So.2d at 1012.
Cool Temp contends that the trial court could not have properly concluded from the complaint in the underlying suit that Pilkerton had alleged that his injury arose “out of and in the course of employment” and “while performing duties related to the conduct of [Cool Tempi's business.” Cool Temp asserts that Pilkerton’s argument that Cool Temp was civilly liable to him under the dual-capacity doctrine should have triggered coverage under the policy. Under the dual-capacity doctrine,
“ ‘ “[t]he test is whether the employer’s conduct in the second role or capacity has generated obligations that are unrelated to those flowing from the company’s or individual’s first role as an employer. If the obligations are related, the doctrine is not applicable.” ’ ”
Ritchie v. Bridgestone/Firestone, Inc., 621 So.2d 288, 290 (Ala.l993)(quoting Bowen v. Goodyear Tire & Rubber Co., 516 So.2d 570, 571-72 (Ala.1987), quoting in turn Therrell v. Scott Paper Co., 428 So.2d 33, 37 (Ala.1983), quoting in turn McCormick v. Caterpillar Tractor Co., 85 Ill.2d 352, 357, 53 Ill.Dec. 207, 209, 423 N.E.2d 876, 878 (1981)).[4]
Our analysis as to whether PNMCIC had a duty to defend Cool Temp in the underlying suit must begin with an examination of the facts Pilkerton alleged against Cool Temp in his complaint. In the opening paragraph of the complaint, Pilkerton claimed that he was employed by Cool Temp on the date of the injury. Although Pilkerton did not expressly state that his injury arose out of and in the course of his employment or while he was performing duties related to the conduct of Cool Temp’s business, the allegations in the complaint unequivocally reflect that he was working in the line and scope of his employment at the time of the accident. Specifically, in paragraph 7 of the complaint, Pilkerton asserts that certain Cool Temp employees failed to provide him “with a safe place to work and/or [failed to] maintain the safety protocols for the HVAC system.” Thus, the only reasonable construction of the complaint is that Pilk-erton was alleging that his injury arose out of and in the course of his employment with Cool Temp, the insured.
Because the court is not limited to the bare allegations of the complaint, however, we must now determine whether facts, which could be proved by admissible evidence, exist to establish that PNMCIC had a duty to defend Cool Temp in the underlying suit. In his complaint for worker’s compensation benefits, Pilkerton asserted that his injury of October 24, 2007, arose out of and in the course of his employment with Cool Temp. The transcript of the trial of Pilkerton’s worker’s compensation case reveals that Pilkerton stipulated that his October 24, 2007, injury arose out of and in *458 the course of employment with Cool Temp. The trial court made a finding in the summary judgment in favor of Cool Temp in the underlying suit that Cool Temp had stipulated to the employer-employee relationship with Pilkerton and that § 25-5-52 would serve to bar Pilkerton’s claims sounding in tort. The evidence submitted to the trial court firmly establishes that Pilkerton’s injury arose out of and in the course of his employment with Cool Temp.
The policy unequivocally excludes from coverage bodily injury of a Cool Temp employee “arising out of and in the course of’ his or her employment with Cool Temp regardless of “[wjhether [Cool Temp] may be liable as an employer or in any other capacity.” Because Pilkerton’s allegations against Cool Temp in his complaint in the underlying suit were not covered under the policy and because there is no eviden-tiary support for Pilkerton’s initial contention that his injuries were not related to his employment with Cool Temp, PNMCIC had no duty to investigate further. We hold that the trial court properly concluded that PNMCIC had no obligation under the policy to provide Cool Temp with a defense to Pilkerton’s tort and contract claims, and, consequently, PNMCIC could have not breached the policy; thus, Cool Temp’s claim alleging bad-faith breach of contract against PNMCIC fails because there was no underlying breach of the contract.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Because October 24, 2009, was a Saturday, any tort claims asserted by Pilkerton that were subject to a two-year statute of limitations appear to have been timely filed. See Young v. Michael Dwain Mfg., Inc., 504 So.2d 287, 288 (Ala.Civ.App.1986).

. Section 25-5-52 provides:
"Except as provided in [the Act], no employee of any employer subject to [the Act] ... shall have a right to any other method, forni, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof."

. Rule 21, Ala. R. Civ. P., provides, in pertinent part: "Any claim against a party may be severed and proceeded with separately.” The Committee Comments Adopted February 13, 2004, to Rule 21 state:
"Confusion has sometimes arisen between a true severance and an order providing for separate trials pursuant to Rule 42(b) [Ala. R. Civ. PJ. The distinction has at least the significance that a judgment on the first of *453 two separate trials is not final, absent an order pursuant to Rule 54(b), Ala. R. Civ. P., while after a true severance a judgment on the first action to come to trial is final and appealable without reference to the proceedings in the severed action....
"To avoid ambiguity at the time of bifurcation and later uncertainty as to finality, a party seeking a severance or a separate trial should request that the court make clear whether a Rule 21 severance or a Rule 42(b) separate trial is intended. Opinion of the Clerk, 526 So.2d 584, 586 (Ala. 1988), expressed the clerk’s opinion that the plaintiff in the severed action should pay a filing fee '[w]here a "true” severance under Rule 21 is ordered and the clerk dockets a separate case with a new civil action number.’ "
There is no indication in the record that a separate case had been established. Therefore, it appears that, with regard to the underlying suit and the third-party action, the trial court proceeded as if separate trials were to be held under Rule 42(b), Ala. R. Civ. P.

. Neither this court nor our supreme court has ever expressly adopted the dual-capacity doctrine, although that doctrine has been discussed and rejected due to factual considerations numerous times. See 2 Terry A. Moore, Alabama Workers' Compensation § 21:12 (2d ed. 2013).